In the Matter of David ROMANO, Debtor.

Bankruptcy No. 81–1646.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 9, 1985.

John Mueller, Tampa, Fla., for Marta Romano.

Albert Lima, Langfred White, Tampa, Fla., for debtor.

ORDER ON AMENDED FEE APPLICA-
TION OF CREDITORS AND OBJEC-
TION TO AMENDED FEE APPLICA-
TION

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for consideration upon an Amended Fee Application of Creditors filed by Marta M. Romano and Charles F. Clark, Esq., (Movants) and upon Objection to the Amended Fee Applications filed by David Romano, the Debtor in the above-styled Chapter 11 case. The movants seek an award of expenses and attorney fees pursuant to 11 U.S.C. § 503(b)(3) and (4). The allowance sought is for services rendered in connection with recovery of certain property for the benefit of the Debtor's estate and substantial contribution in Debtor's Chapter 11 case. The movants also seek an award of expenses and attorney fees pursuant to Chapter 61, Florida Statutes (1984), based on services rendered by Mr. Clark in order to protect awards made to Marta Romano or for her benefit by the state court in connection with a dissolution of marriage proceeding.

The Court considered the Amended Fee Application of Creditors and the Objection to the Amended Fee Application along with the record and finds as follows:

David Romano (Debtor) is a surgeon who maintains a medical practice in Tampa, Florida. On September 11, 1981, the Debtor filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code. Marta Romano is the former wife of the Debtor, the marriage having been dissolved.

in a Florida State Court proceeding in 1978. Charles Clark, Esq. represented Mrs. Romano in the dissolution of marriage action.

On November 10, 1980, the state court awarded Mr. Clark attorney fees in the amount of $31,984.92 to be paid by the Debtor. However, prior to the entry of the final judgment, the Debtor transferred his only non-exempt interests in real property to Glenn and Mary Testerman, the parents of the Debtor's second wife.

On December 3, 1981, Mr. Clark and Marta Romano filed a complaint objecting to the discharge of the Debtor pursuant to § 727(a)(2) of the Code alleging that the conveyance to the Testermans was made with an intent to defraud creditors, therefore, the Debtor should be denied his discharge. In addition, they also filed a complaint and sought a determination of the dischargeability of debt owed to them by the Debtor under § 523(a)(5). On May 23, 1984, the Court entered an order denying the Debtor's right to obtain a discharge based on the finding that the Debtor fraudulently conveyed the real property.

While the adversary proceeding initiated by the complaint objecting to discharge was pending, the Chapter 7 trustee filed a complaint and sought to avoid the transfer of the property to the Testermans as a preference pursuant to § 547 of the Code. The trustee later amended his complaint and added a count seeking to avoid the transfer as fraudulent.

On November 7, 1983, the trustee filed a Motion for Approval and Notice to Creditors of Trustee's Intention to Compromise Controversy. The trustee sought court approval to compromise his claims against the Testermans for the sum of $4,000. Marta Romano, Charles Clark, and John Mueller, counsel of record for Marta Romano, filed an objection to the proposed compromise. The objection was based, in part, on the allegations that the proposed settlement is grossly inadequate; that the estate has a legitimate and provable claim for fraudulent transfer against the Testermans, and the offer by the Testermans was grossly inadequate. The Court, after a hearing on the proposed compromise and objection, sustained the objection and rejected the compromise.

After this Court determined that the Debtor was not entitled to obtain a discharge, on June 15, 1984, the Debtor filed a notice of conversion from a Chapter 7 liquidation case to a reorganization case under Chapter 11 of the Code. On June 27, 1984, the case was converted.

On November 29, 1984, the Court entered an order and approved the Debtor's Application to Compromise Controversy in settlement of adversary proceeding number 83–683 in which the trustee sought to set aside certain transfers made to the Testermans. Pursuant to the compromise, the transfers were set aside and the property was brought back into the estate. As part of the compromise the Testermans were granted a lien for sums expended by them for maintenance, preservation and betterment of the Bay Way and Morris Bridge Road properties, the properties which were subject to the transfers challenged as fraudulent.

On December 13, 1984, this Court entered an order granting the Debtor's Motion to Sell the Morris Bridge Road and Bay Way properties free and clear of liens. The Debtor sought court approval of a sale of the Bay Way property for the sum of $225,000. The movants objected to the proposed sale and procured another contract for sale of the property for the sum of $245,000. On February 5, 1985, the Court approved the sale for the sum of $245,000.

Thereafter, the movants filed a Fee Application to which the Debtor objected and on March 26, 1985, the movants filed an Amended Fee Application for the Court's consideration. On April 11, 1985, the Debtor filed an Objection to the Amended Fee Application and it is the Amended Application and Objection which are currently before this Court.

As noted earlier, the movants seek expenses and attorney fees pursuant to Bankruptcy Code § 503(b)(3) and (4) which provide in pertinent part:

§ 503 Allowance of Administrative Expense

(a) ....

(b) After notice and hearing, there shall be allowed administrative expenses, including

(1) ...

(2) ...

(3) the actual necessary expenses incurred by

(A) ...

(B) A creditor that recovers *after the court's approval,* (emphasis supplied) for the benefit of the estate any property transferred or concealed by the Debtor

(C) ...

(D) A creditor ... in making a substantial contribution in a case under Chapter 9 or 11 of this title;

(E) ...

(4) reasonable compensation for professional services rendered by an attorney ... whose expense is allowable under paragraph

(3) of this subsection ... and reimbursement for actual, necessary expenses incurred by such attorney.

11 U.S.C. § 503(b)(3) and (4).

In seeking an allowance of attorney fees and costs as an administrative expense, the movants rely on the case of *In re George,* 23 B.R. 686 (Bankr.D.S.Fla.1982). In that case the Court awarded attorney fees for services rendered in connection with a successful objection to discharge and in connection with discovery of concealed assets. The Court noted that the enactment of § 503, in conjunction with other provisions of the 1978 Bankruptcy Code, altered language previously contained in the Bankruptcy Act which expressly authorized recovery of attorney's fees and costs for creditors who successfully oppose a discharge. In *George* the Court concluded, however, that the effect of the omission in § 503(b) was to transform it from a mandatory allowance to a discretionary allowance, and based on the facts of the particular case, the Court "retroactively" approved the efforts of the creditor and his attorney, thereby bypassing the prior approval requirement.

It must be pointed out that other courts which have faced this problem have not found the *George* decision persuasive. In the case of *Lazar v. Casale (In re Casale),* 27 B.R. 69 (Bankr.S.D.N.Y.1983), the Court held that a creditors attorney was not entitled to an award of fees for successfully challenging a discharge where he did not seek prior court approval. The Court reasoned, in contrast to the *George* Court, that a change of statutory language indicates an intentional departure from the old law; see *Shamrock Oil & Gas Co. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Therefore, when § 64(a) of the Act was recodified in § 503(b)(3)(B) of the Code, Congress limited the allowance to "those situations wherein the creditor had sought and was granted prior court approval ..." *In re Casale,* 27 B.R. at 70. *Accord In re Spencer,* 35 B.R. 280 (Bankr.N.D.Ga.1983). In addition, the Court noted that the intent of § 503(b)(3)(B) is further strengthened by the precedent in the context of bankruptcy that professionals are charged with the knowledge of the "prior authorization rule". *In re Casale, supra* citing *In re Futuronics Corp.,* 655 F.2d 463 (2d Cir. 1981), and, therefore, nunc pro tunc authorization cannot be premised on alleged "ignorance of the rule". *In re Casale, supra, citing In re WDFR, Inc.,* 22 B.R. 266 (Bankr.N.D.Ga.1982).

This Court is satisfied that the better view is represented by the line of cases which hold that prior court approval is prerequisite to the allowance of a creditor's reasonable fees and expenses as an administrative priority pursuant to § 503(b)(3)(B). Thus, although there is no doubt that these creditors successfully blocked this Debtor's discharge and were instrumental in the ultimate recovery of fraudulently transferred property, they are not entitled to recover fees and expenses pursuant to § 503(b)(3)(B).

This leads to the question of whether the movants are entitled to an allowance under § 503(b)(3)(D) and § 503(b)(4), that

is, compensation for legal services performed which resulted in a substantial contribution to a Chapter 11 case. These legal services may be compensable even if performed by counsel for its client, so long as the services substantially contribute to a successful result. *In re Richton International Corporation*, 15 B.R. 854 (Bankr.S. D.N.Y.1981), citing *In re Consolidated Motor Parts*, 85 F.2d 579 (2d Cir.1936). This Court is satisfied that the steps undertaken by the movants during the entire course of this case, most notably while the case was in Chapter 7, substantially contributed to an ultimately successful reorganization. Unfortunately, the movants cannot, as noted earlier, recover expenses and fees for the pre-Chapter 11 activities despite the fact that their constant pursuit of this Debtor resulted in a denial of discharge, a conversion from a Chapter 7 to 11 with a 100% plan, and brought valuable property back to the estate. In addition, the movants successfully objected to the trustee's proposed compromise regarding the fraudulently transferred property and arranged to sell certain property of the estate for $20,000; more than would be generated by a sale arranged by the Debtor.

 Based on the foregoing, this Court is satisfied that the movants are entitled to be awarded compensation for the reasonable value of the legal services rendered and expenses incurred during the pendency of the Chapter 11 and pursuant to § 503(b)(4), but none pursuant to § 503(b)(3)(B) and the amount is to be determined by a separate order after notice and a duly scheduled hearing.

 This leaves for consideration whether Marta Romano is entitled to an award of her attorney's fees incurred before this Court pursuant to Chapter 61, Florida Statutes. It needs no elaborate discussion to point out the obvious, that services rendered to a creditor are not chargeable under any theory as cost of administration. The entitlement of Marta Romano to attorney fees in connection with her divorce is a matter completely separate and apart from any aspect of this Chapter 11 case. For this reason, this Court is satisfied that the attorneys fees sought are not properly chargeable against this estate since they were incurred post-petition. Therefore, it is appropriate that any attorney fees sought pursuant to Chapter 61, Fla.Stat. (1984) should be requested and determined by the state court. Accordingly, this Court shall refrain from ruling on this issue and Marta Romano may seek relief in a state court proceeding. Accordingly it is

ORDERED, ADJUDGED AND DECREED that the Amended Fee Application of Creditors filed by Marta Romano and Charles F. Clark, Esq. be, and the same hereby is, approved in part and disapproved in part. The movants shall be entitled to reasonable attorneys fees for services performed in connection with the Chapter 11 case, amount to be determined at a hearing on November 4, 1985 at 11:15 a.m.