**In re Harold BROWN, Debtor.**

**Bankruptcy No. 91–12022–WCH.**

United States Bankruptcy Court, D. Massachusetts, E.D.

Nov. 5, 1992.

## OPINION RE FEE APPLICATIONS OF ATTORNEY AND ACCOUNTANT FOR PETROS A. PALANDJIAN

WILLIAM C. HILLMAN, Bankruptcy Judge.

Hanify & King Professional Corporation ("H & K") as attorneys and The Munroe Company ("Munroe") as accountants (collectively "the Applicants") seek compensation for services rendered in connection with a number of the debtor and non-debtor entities involved in the restructuring of the debts of Harold Brown and affiliates ("Brown"). The Applicants were retained not by the estate, but rather by the interests of Petros A. Palandjian.

The United States Trustee objected to the applications. The Creditors' Committee filed a limited objection. The matter was taken under advisement. A response to the objections of the United States Trustee was received from the Applicants. No objection was made by any of the debtors.

The liability of the various Brown entities is said to arise in two ways. First, by virtue of a settlement stipulation approved by the Court; and second, by virtue of 11 U.S.C. § 503(b)(4).

Petros A. Palandjian ("Palandjian") has an interest, generally as a partner, in 12 of the entities involved in these jointly administered proceedings ("the Palandjian Affiliates"). His relationship with Brown has been marked with a fair amount of acrimony, resulting in considerable activity before the Court.

Ultimately, the parties entered into a settlement agreement dated as of January 21, 1992 ("the Agreement"). The Agreement was approved by the Court by Order of February 5, 1992 ("the Order").

The Agreement was in the form of a letter from Palandjian to Brown. It contained certain provisions with regard to professional fees incurred or to be incurred by Palandjian.

### The H & K Application

As relevant here, Paragraph 8 of the Agreement contained the following provision:

a. The Palandjian Affiliates shall reimburse to [Palandjian] their fair and reasonable share of such [legal] costs subject to

(x) a cap of $15,000 in the aggregate for services rendered by my general counsel (Posternak, Blankstein & Lund) and my special bankruptcy counsel (Hanify & King) for services relating to this agreement including obtaining requisite court approval therefor and

(y) reasonable charges for services rendered by my special bankruptcy counsel (Hanify & King) relating to its implementation including any matters incident to any Plan(s) for the Palandjian Affiliates (and for Hamilton and you to the extent that such Plans affect the Palandjian Affiliates);

b. Such costs and reimbursement shall be subject to approval by the Bankruptcy Court; and

c. Such costs shall be reimbursable upon such approval.

The attorneys' and accountants' fees are sometimes described in the Agreement as Palandjian's "restructuring costs."

The Order authorized and approved the Agreement with certain amendments. In particular it contains these paragraphs:

b. The fairness, reasonableness and allocation among the Debtors of the so-called Restructuring Costs described in the first full paragraph of Section 8 ... be, and hereby are, subject to this Court's ultimate determination, all rights of interested parties with respect thereto being hereby reserved; and

c. The fairness, reasonableness and allocation among the Debtors of the reimbursement to Palandjian of certain costs described in the second full paragraph of Section 8 ... be, and hereby are, subject to this Court's ultimate determination, all rights of interested parties with respect thereto being hereby reserved....

The paragraph structure of the full text of ¶ 8, not reproduced here, leaves some

doubt about whether the reservation of rights in the Order relates to the fees now under discussion.

■ As a threshold inquiry, the Court must determine if it has deprived itself of jurisdiction to deny fees altogether, having approved the Agreement.

The introductory language of ¶ 8a, quoted above, is that the fees payable must first satisfy a test of fairness and reasonableness. After consideration, the Court finds that the language leaves to the Court the same issues it would face were it dealing with an application for fees under 11 U.S.C. § 503(b), absent any undertaking such as the Agreement. If the quoted language in the Order does apply, it supports this conclusion; if it does not, the determination is not affected.

■ Before looking at the expense and fee amounts sought, it is necessary for the Court to make a preliminary determination that the expenses of H & K's client are actual and necessary and are those of a creditor in making a substantial contribution in a case under chapter 11. 11 U.S.C. § 503(b)(3)(D). It is only when an affirmative response is reached to that issue do we continue to consider "reasonable compensation for professional services rendered by an attorney or an accountant for an entity whose expense is allowable under paragraph (3)...." 11 U.S.C. § 503(b)(4). *In re Johnson*, 126 B.R. 808, 810 (Bankr. M.D.Fla.1991).

Various Palandjian Affiliates filed proofs of claim, thus satisfying the requirement that the expenditures be made by a creditor. 11 U.S.C. § 101(10).

The next issue to be faced is whether the alleged contribution consists of services which "foster and enhance, rather than retard or interrupt the progress of reorganization." *In re Baldwin–United Corp.*, 79 B.R. 321, 338 (Bankr.S.D.Ohio 1987); *In re Richton Int'l Corp.*, 15 B.R. 854, 856 (Bankr.S.D.N.Y.1981). This formulation is actually a gloss on "necessary."

As the consideration of the "foster and enhance" standard involves examination of the Palandjian's activities in the case, it will be combined with the general factual inquiry which follows.

If the answer to that inquiry does not resolve the situation, the Court will continue to the next step, a determination of "whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Haskins v. United States (In re Lister)*, 846 F.2d 55, 57 (10th Cir.1988), and cases cited. *See also* Johnson, Recovering a Creditor's Expenses and Legal and Accounting Fees as an Administrative Claim, 5 Bankr.Dev.J. 463, 483 (1988).

■ Something more than minimal assistance to the estate must have been provided. *Haskins, supra* at 58. The benefit must be significant and tangible. *In re D'Lites of America, Inc.*, 108 B.R. 352, 356 (Bankr.N.D.Ga.1989).

The Applicants have the burden of showing their substantial contribution. *Haskins v. United States (In re Lister), supra*. They introduce their argument with this statement:

H & K and Monroe (sic) submit that their services have fostered and enhanced the reorganization of the Debtors. The consummation of the Agreement, the implementation of the Agreement and the audit have resulted in a consensual framework which addresses the Palandjian Affiliates' claims and interests, rights and obligations and those of Brown and Hamilton which have effectuated advancing the progress of the reorganization without the necessity of protracted, expensive and time consuming dispute resolutions by the Court.

It would be unfair to hold the Applicants to the four corners of this statement. Failure to allege a benefit to creditors should constitute grounds for denial of fees under the *Haskins* rule. "Ultimately, what constitutes a substantial contribution must be left to the informed discretion of the Court based upon the time sheets and other relevant evidence...." *In re Baldwin–United Corp., supra*. It is a factual inquiry. *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1283 (5th Cir.1986); *In re 9085*

*E. Mineral Office Bldg. Ltd*, 119 B.R. 246, 249 (Bankr.D.Colo.1990).

### Review of docket entries

H & K's application indicates that its first contact with Palandjian was on December 27, 1991. Reviewing the docket from that date forward shows the following entries involving Palandjian. Entries reflecting activities of Palandjian's counsel are underlined.

| Date/Doc. | # | Entry |
|---|---|---|
| 1/21/92 | 400 | Objection by Palandjian to application to employ management consultant Honig & Associates, Inc. and Ross G. Honig in re jointly administered case nos. [7 cases]. (Order entered granting action sought in part 1/23/92 [404]). |
| 1/21/92 | 401 | Memorandum by Debtors in response to [400] objection.... |
| 1/23/92 | 402 | Notice of appearance and request for service of notice by Harold B. Murphy for Palandjian. |
| 1/27/92 | 405 | Motion by Debtor Harold Brown for authority to compromise controversies and for approval of stipulation (Palandjian). |
| 1/27/92 | 406 | Motion by [Debtor's counsel] to expedite hearing on [405]. |
| 1/31/92 | 414 | Objection by Palandjian to [365] Motion for authority to enter into stipulation (Chase Manhattan Bank, N.A.—Omnibus Realty Trust) by Harold Brown. (An order granting the motion was entered 2/5/92 [428]). |
| 2/ 5/92 | 427 | Hillman, J. Order granting [405]. |
| 6/16/92 | 679 | Emergency motion by Palandjian to compel access to books and records, to extend the bar date for filing claims and for costs. |
| 6/29/92 | 708 | Hillman, J. Re [679]: Order entered extending bar date. Request for sanctions and costs withdrawn and accordingly denied. |
| 7/13/92 | 731 | Objection by Palandjian to [709] Motion for authority to enter into stipulation (FNB/Magnum) by Harold Brown. |
| 8/12/92 | 799 | Motion of H & K as counsel to Palandjian and Munroe for extension of time to file applications for compensation, etc. (Granted by endorsement order). |
| 8/14/92 | 818 | Motion by Palandjian to compel compliance with court orders. Expedited determination requested. |
| 8/20/92 | 827 | Debtors' response to [818]. |
| 8/24/92 | — | Hillman, J. [818] taken under advisement. |
| 8/25/92 | 835 | Objection by Palandjian to [776] Motion for authority to enter into stipulation (Fleet, Winter 8 et al) by Harold Brown. Objections withdrawn in open court. 8/27/92 |
| 8/26/92 | 836 | Affidavit of Palandjian re [818]. |
| 8/28/92 | 843 | The applications which are the subject of this decision. |
| 8/31/92 | — | Hearing on [843]. |

| Date/Doc. | # | Entry |
|---|---|---|
| 9/ 1/92 | 847 | Motion by debtor to compromise controversies and for approval of supplemental stipulation (Brown/Palandjian). |
| 9/ 8/92 | 868 | Hillman, J. Order granting [847]. |
| 9/22/92 | 909 | Limited objection of creditors' committee to these applications. |
| 10/14/92 | 935 | Objection to these applications by United States Trustee. |
| 10/26/92 | 957 | Amended application by Munroe. |
| 10/27/92 | 956 | H & K response to [935] on behalf of H & K and Munroe. |

These entries fall into two classes, the approval of the Agreement and its amendment, and objections to the approval of various actions sought by the debtors.

The latter cannot be said to have contributed in any significant way to the estate, especially when it is noted that most of the motions objected to were granted over the objections, or the objections were withdrawn. They did not foster and enhance the progress of the reorganization but neither did they retard it to any significant effect. It remains, then, to examine the Agreement itself to see how it impacts upon the estate.

The Court has carefully considered the contents of the Agreement. While, to a minor extent, it does affect the reorganization, the primary thrust of the efforts was to settle the relationships between two (in the broadest sense) partners and their business alter egos. An incidental benefit to the estate or creditors as a whole is not sufficient to sustain the relief sought. *In re F.E. Frederick Ents., Inc.*, 146 B.R. 360, 362 (Bankr.W.D.Pa.1992), and cases cited.

In addition, the Court has considered its own "first-hand observance of the services provided," *In re United States Lines, Inc.*, 103 B.R. 427, 430 (Bankr.S.D.N.Y.1989), and finds nothing in its recollection of the hearings to change its conclusion.

When any benefit to the estate is indirectly reflected through the direct efforts to advance Palandjian's interests, as the Court finds to be the case here, H & K has not met the "substantial contribution" standard. *In re Sound Radio, Inc.*, 145 B.R. 193 (Bankr.D.N.J.1992); *In re Jack Winter Apparel, Inc.*, 119 B.R. 629 (Bankr. E.D.Wis.1990).

Creditors face an especially difficult burden in passing the "substantial contribution" test since they are presumed to act primarily in their own interests. Attorneys must generally look to their own clients for payment.

*In re United States Lines, Inc., supra* (citations omitted).

Having taken this position, it is not necessary for the Court to consider the objections to the substance of the fees and expenses sought to be recovered by H & K.

### The Munroe Application

 Munroe falls under a different provision of the Agreement. As applicable here, ¶ 4d(1) provides that:

> The Palandjian Affiliates shall reimburse to [Palandjian] the reasonable costs of conducting an audit of their financial affairs *provided*, however, that ... such reimbursement shall be subject to a cap of $25,000....

A review of the services performed indicates that Monroe produced a good deal of material dealing with the allocation of expenses between the Palandjian Affiliates and the other debtor and non-debtor Brown entities. Because these cases were jointly administered but not consolidated substantively, issues of proration of items became quite critical; they were involved in a number of hearings in these cases quite removed from Palandjian and his concerns. However, a review of the entries demonstrates that the primary beneficiary of the services was Palandjian, who was preparing his proofs of claim to be filed in the various cases. Munroe's final services were rendered the day before the proofs were dated.

The Court finds this aspect of the applications more troublesome than that of H & K. Paragraph 4 contains none of the language subjecting Munroe's charges to the approval of the Court that is found in ¶ 8 relating to H & K. The Court should not have approved the Agreement without reserving control over Munroe's fees as well. In so doing it abdicated its responsibility to review professional fees and expenses, an attitude it has properly refused to take in other circumstances. *In re Wang Laboratories, Inc.*, 143 B.R. 794 (Bankr.D.Mass. 1992).

Because of the Court's error in approving the Agreement in that form, it would be inequitable to hold Munroe to the standard to which H & K, but not Munroe, had agreed. A reasonable *quid pro quo* will be to compensate Munroe on condition that it make its work product available to the Palandjian Affiliates, and the Court will so order.

### Conclusions

1. The application for fees and expenses of Hanify & King is denied.

2. The application of The Munroe Company is allowed in the amount of $25,000, to be apportioned between the Palandjian Affiliates as provided in the Agreement; provided, that The Munroe Company shall make its work product developed in the course of its employment in this matter available to the Palandjian Affiliates for their use.

An appropriate order will enter.