**In re AMERICAN PREFERRED PRESCRIPTION, INC.,**
**Debtor.**

**Bankruptcy No. 893–84170–478.**

United States Bankruptcy Court,
E.D. New York.

April 17, 1996.

Schwarzfeld Ganfer & Shore by Alan C. Fried, New York City, for Debtor.

Marcus Montgomery P.C. by John J. Preefer and Linda C. Jamieson, New York City, for Hadiya Holding Inc.

DOROTHY EISENBERG, Bankruptcy Judge.

Before the Court is the final fee application of Marcus Montgomery P.C. (the "Marcus Firm" or "Marcus") pursuant to Bankruptcy Code sections 503(b)(3)(D) and (4), seeking compensation for professional legal services and reimbursement of its actual, necessary expenses in the total sum of $87,-583.69. This Court held a hearing to consider the application on February 13, 1996 at which time the Court heard testimony and received exhibits from the Marcus Firm, as well as opposition by counsel to the Debtor. Both of the parties filed post-hearing memoranda of law, though Marcus filed its memo one day late. For the reasons discussed below, this Court concludes that the Marcus Firm is not entitled to an administration fee from this Debtor and therefore, its application is denied in its entirety.

## FACTS

This case presents an unusual scenario. The Marcus Firm was retained to represent Hadiya Holding, Inc. ("Hadiya") in the Debtor's bankruptcy case. At the time the Debtor filed its Chapter 11 petition on July 22, 1993, Hadiya was one of the largest secured and unsecured creditors of the Debtor and held a voidable claim. Hadiya is an entity whose principals are closely associated with the Debtor. The Marcus Firm performed legal services for Hadiya for a period of several months during 1994. Marcus ceased representing Hadiya on September 29, 1994 when John Preefer, the principal Marcus attorney representing Hadiya, resigned from representation. Sometime in 1995 Hadiya

sold and assigned its secured claim to an entity called Tracar S.A. and thus, is no longer part of the case. Neither Hadiya nor Tracar S.A. supports Marcus' fee application.

In the instant application, Marcus seeks, under Code section 503(b)(4), payment from this Debtor's estate for legal fees of $76,462.50 for services rendered on behalf of Hadiya from June 1, 1994 through September 29, 1994, compensation of $4,000 for the time expended in the prosecution of the instant application and reimbursement of expenses totaling $7,121.19, based primarily on a claim that it was Mr. Preefer's proposed plan which was the basis for the plan ultimately confirmed by this Court. He points to various paragraphs, phrases and explicit language which appear to have been duplicated in the confirmed plan but which came from his originally proposed plan. Mr. Preefer's plan was never confirmed. Hadiya previously paid the Marcus Firm $78,245.00 for services rendered through May, 1994. The evidence presented at the hearing indicated that Ray Adiel, a principal of the Debtor, was the conduit for payment of Hadiya's legal bills throughout 1994. Hadiya, as a former substantial creditor of this Debtor, has never applied to this Court, pursuant to section 503(b)(3)(D), for reimbursement of its legal or non-legal expenses in making a substantial contribution to this case.

The Debtor objects to Marcus' application, arguing that the fee application is actually a fee dispute between Marcus and Hadiya and that there was no substantial contribution in this case to warrant payment from this Debtor's estate.

## DISCUSSION

The threshold issue is whether Marcus, as former counsel to a creditor, has standing to bring a fee application under section 503(b)(4) independent of the former creditor (*i.e.*, Marcus' former client), seeking reimbursement for counsel's own expenses under section 503(b)(3)(D) for making a substantial contribution to a Chapter 11 case. This initial question appears to be a novel issue not addressed directly in any reported

decisions. If Marcus does have standing to bring the fee application directly on counsel's behalf, the second issue is whether Marcus rendered "substantial contribution" to the Debtor's reorganization.

### A. *Standing*

Section 503(b) states in relevant part:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(D) a creditor ... in making a substantial contribution in a case under chapter 9 or 11 of this title;

(4) reasonable compensation for professional services rendered by an attorney or an accountant *of an entity whose expense is allowable under paragraph (3) of this subsection,* based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

11 U.S.C. § 503(b)(3)(D), (4) (emphasis added).

The starting point for this Court's analysis is the language of the two relevant subsections of section 503(b)(3)(D) and (b)(4). The language of section 503(b)(3)(D) is clear. It permits, among others a creditor, to receive as an administrative expense its actual, necessary expenses, (other than legal fees and expenses contemplated under section 503(b)(4)) incurred when making a substantial contribution to a Chapter 11 case.

On its face, section 503(b)(4) is similarly precise. Section 503(b)(4) permits the bankruptcy court to allow, as an administrative expense, reasonable compensation for professional services rendered by an attorney for an entity whose own expenses may be allowed by the court as a substantial contribution to the case under one of the sub-sections

listed in 503(b)(3). 3 *Collier on Bankruptcy* ¶ 503.04, at 503–55[4] (15th ed. 1995). Subsection (b)(4) must be read together with sub-section (b)(3)(D). *In the Matter of Buckhead America Corp.*, 161 B.R. 11, 15 (Bankr. D.Del.1993).

By the plain language of the statute, section 503(b)(4) requires a finding of substantial contribution by a creditor under section 503(b)(3)(D) as a pre-requisite to an award of counsel fees under section 503(b)(4). In this case, the entity—Hadiya—never applied to this Court for reimbursement of its expenses in making a substantial contribution to the case; has been out of the case for over one year; and, this Court has never been asked to determine whether Hadiya's expense, as a former creditor, should be compensated for making a substantial contribution to this estate. As the Third Circuit Court of Appeals pointed out, "§ 503(b)(4) authorizes awards of legal and accounting fees only in the situations coming within the scope of § 503(b)(3)...." *Lebron v. Mechem Financial Inc.*, 27 F.3d 937, 943 (3d Cir.1994); *see In the Matter of Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1252 (5th Cir.1986) ("the court may award the actual, necessary expenses incurred by a creditor, including his attorney's fees, if he has made 'a substantial contribution in a case under chapter 9 or 11'...."). In this Court's reading of section 503(b)(4) in order for Marcus to be reimbursed under that section, Marcus' client, the former creditor Hadiya, must be an entity whose expense is allowable under section 503(b)(3)(D). The Marcus Firm, as Hadiya's former counsel, cannot simply apply for legal fees and reimbursement of legal-related expenses independent of a determination that Hadiya's own expenses are allowable. The creditor must either, first or together with the attorney, apply to the court for reimbursement of expenses allowable under section 503(b)(3)(D) for making a substantial contribution to the case. The creditor should at least support the counsel requesting the fees which were incurred on behalf of the creditor and which result in a benefit to the estate, aside from, and in addition to those services which benefit the creditor.

The Court has not located any case law directly on point. Many cases on sections 503(b)(3)(D) and (4) deal exclusively with the typical situation where *both* the creditor, or other entity listed in section 503(b)(3)(D), *and* creditor's counsel sought an award for fees and expenses. However, two cases on section 503(b) allowances are instructive in this instance. In *In re Johnson*, 126 B.R. 808 (Bankr.M.D.Fla.1991), a creditor, apparently on behalf of its counsel, sought to have its legal fees allowed as an administrative expense pursuant to section 503(b)(3)(D) and (4). In denying the application the court stated:

> In order for Florida Georgia [the creditor] to be awarded an administrative expense for its attorney fees ... under § 503(b)(4), *it must first be determined under § 503(b)(3)(D) that Florida Georgia is a creditor which made a substantial contribution in the Debtor's Chapter 11 case* and thus is entitled to reimbursement of its actual, necessary expenses incurred in making that contribution.

*Id.* at 810 (emphasis added). After noting that, in general, attorneys must look to their own clients for payment of legal fees and expenses, the court continued,

> In light of the fact that there has been no determination by this Court that Florida Georgia is a creditor which made a substantial contribution to these Chapter 11 cases, this Court cannot award to Florida Georgia an administrative expense for the attorney fees it incurred pursuant to § 503(b)(4).

*Id.* The court addressed the substantial contribution issue anyway and determined that there was no substantial benefit by the creditor in that case. In another case, *In re Brown*, 147 B.R. 55 (Bankr.D.Mass.1992), attorneys and accountants who were retained by a partner in several entities involved in a jointly administered Chapter 11 case sought compensation. As a preliminary issue, the court stated:

> [I]t is necessary for the Court to make a preliminary determination that the expenses of [the law firm's] client are actual and necessary and are those of a creditor in making a substantial contribution in a

case under chapter 11.... It is *only when an affirmative response is reached to that issue do we continue* to consider 'reasonable compensation for professional services rendered by an attorney or an accountant for an entity whose expense is allowable under paragraph (3)....'

*Id.* at 58 (citing *Johnson,* 126 B.R. at 810) (emphasis supplied). The court went on to deny the law firm's application for fees and expenses. Both of these cases clearly establish that a finding of substantial contribution by a creditor under section 503(b)(3)(D) is a pre-condition to an award of counsel fees under section 503(b)(4).

Neither the Marcus Firm nor counsel to the Debtor referred this Court to any other dispositive case law. Instead, citing principally to *In re Richton International Corp.,* 15 B.R. 854 (Bankr.S.D.N.Y.1981), the Marcus Firm proffers a two part argument. First, Marcus argues that it is entitled to compensation from the Debtor even where the firm served the interests of its client. *Id.* at 856.[1] Marcus' reliance on *Richton* is misplaced. *Richton* involved the section 503(b)(4) application of counsel to several creditors and addressed the issue of the appropriateness of section 503(b)(4) allowances to counsel for a creditors' committee which was not the official creditors' committee. In the course of his analysis, Judge Galgay simply noted the tension that exists between the section 503 policy objectives of encouraging creditor participation in a case and authorizing the Debtor to pay legal compensation for creditors' counsel. The *Richton* case did not involve any issue of standing for counsel to apply for fees independent of its client's request or support and the court's dicta can hardly be interpreted to stand for the proposition that the Debtor must pay for a creditor's legal fees under section 503(b)(4) absent a prior court determination that the creditor

itself is entitled to "substantial contribution" reimbursement under section 503(b)(3)(D).[2] Moreover, in *Richton* the applicant law firm was previously paid in full by their clients, the creditors, and the court directed that the award to the law firm be refunded to the clients. *Id.* at 855.

Second, without citation to any legal authority, the Marcus Firm asserts that the creditor who was represented need not file its own application under section 503(b)(3)(D). Here again, this Court rejects Marcus' contention. In light of the analysis set forth above, this argument is obviously incorrect and *Richton* does not hold otherwise. Furthermore, in *Richton* the court recognized that "[s]ubsection (4) allows reasonable compensation for services rendered by an attorney *of an entity which can receive expenses under subsection (3).*" *Id.* at 855 (emphasis added). In short, the *Richton* case is correct as far as it goes, but is not supportive of Marcus' application.

Two well-recognized authorities in the bankruptcy field confirm this Court's decision that the Marcus Firm does not have standing to bring this application. Former Bankruptcy Judge Norton counsels:

Under § 503(b)(4) attorneys and accountants employed by a third party who has an allowable expense under § 503(b)(3) may be awarded reasonable compensation for professional services provided in connection therewith....

In combination with § 503(b)(3), this section permits parties whose conduct results in a cognizable benefit to the estate or the creditors as a whole to recover compensation for the services provided and expenses incurred in that undertaking. The two subsections in tandem encourage active participation by creditors in the reorganization or bankruptcy process....

---

1. *See In the Matter of David Romano,* 52 B.R. 590 (Bankr.M.D.Fla.1985). In *Romano,* both the creditor and her counsel applied for fees and expenses. The court cited *Richton* for the proposition that legal services may be compensable under section 503(b)(3)(D) and (b)(4) "even if performed by counsel for its client, so long as the services substantially contribute to a successful result." *Id.* at 594.

2. It is not clear from the court's opinion in *Richton* whether the creditors themselves had ever previously applied for and received reimbursement of their expenses under section 503(b)(3)(D) for making a substantial contribution to the case, though the court stated that it previously fixed allowances for all parties except the applicant. *Id.* at 855.

Importantly, however, the linkage between § 503(b)(3) and (4) must be kept in mind; compensation under subsection (4) should be strictly limited to only those professional services performed incidental to the activities giving rise to the third party's allowable expense claim under subsection (3). Analysis under § 503(b)(4) is inextricably intertwined with that under § 503(b)(3). Courts assess whether the professional services aid the third party in fulfilling compensable subsection (3) services. . . .

2 Norton Bankruptcy Law and Practice 2d § 42.28, at 42–159 (2d ed. 1994). Collier on Bankruptcy echoes this view:

Section 503(b)(4) is designed to permit reasonable compensation for professional services rendered by an attorney or an accountant to an entity whose own actual, necessary expenses are allowable under sections 503(b)(3)(A)–(E).

Attorneys for creditors or others may look to the estate of the debtor for compensation only as to the limited number of services incident to the conferral of administrative status for the actual, necessary expenses of creditors in the instances described in section 503(b)(3)(A)–(D).

3 Collier on Bankruptcy, ¶ 503.04[4], at 503–55 (15th ed. 1995).

Administrative expenses should be kept to a minimum in order to maximize creditors' recovery from the estate. In re Hooker Investments, Inc., 188 B.R. 117, 120 (S.D.N.Y.1995). While the policy aim behind section 503 is to promote meaningful creditor participation in the reorganization case, it is well settled that this provision should be narrowly construed. In re Alert Holdings Inc., 157 B.R. 753, 757 (Bankr.S.D.N.Y.1993); In re United States Lines, Inc., 103 B.R. 427, 429 (Bankr.S.D.N.Y.1989), aff'd, 1991 WL 67464 (S.D.N.Y.1991) (citing In re Flight Transportation Corp. Securities Litigation, 874 F.2d 576, 581 (8th Cir.1989) and In re O.P.M. Leasing Services, Inc., 23 B.R. 104, 121 (Bankr.S.D.N.Y.1982)).

Ordinarily, a creditor's attorney must look to its own client for payment. U.S. Lines, 103 B.R. at 430; In re General Oil Distributors, Inc., 51 B.R. 794, 806 (Bankr.E.D.N.Y.

1985). This is one such case. As the Debtor emphasized, the Marcus Firm was already paid for earlier work that it performed for Hadiya, though allegedly not for all of the services petitioned for in this application. At some point in 1994, Hadiya ceased paying its legal bill for services performed by the Marcus Firm. Nevertheless, based on the dubious assurances of Ray Adiel, Marcus continued to perform work for several months without receiving payment. Thus, the fees and reimbursement of expenses sought here, after closer review, appear to be a fee dispute between client and attorney.

Because the Marcus firm is not a creditor of the Debtor, and does not have standing to apply for fees pursuant to § 503(a)(3)(D) and (4) as heretofore indicated, the Court need not consider whether Marcus' claim for substantial contribution should be approved. However, the Court will deal with this issue so that its decision is clear on all issues raised by Marcus.

B. *Substantial Contribution*

Marcus contends that it rendered substantial contribution to the Debtor's case in the following ways: (1) Marcus developed an earlier plan of reorganization (the "Hadiya Plan") filed with this Court on May 18, 1994 which was copied and incorporated by the Debtor's present bankruptcy counsel and which remains as the core of the Debtor's confirmed plan; (2) the Marcus Firm assisted in preventing the appointment of a Chapter 11 operating trustee by bringing a business consultant (ultimately hired by the Debtor) into the case to assist in the Debtor's reorganization; (3) Marcus' efforts on behalf of Hadiya obviated the need for litigation against insiders of the Debtor; and (4) Marcus prevented or mediated disputes between the Debtor and its landlord. Only the first of these alleged bases of substantial contribution warrants brief discussion.

The "substantial contribution" test is satisfied when it is demonstrated that the services rendered have substantially contributed an actual, direct and demonstrable benefit to the estate, its creditors and to the extent relevant, the debtor's shareholders.

*In re McLean Industries, Inc.,* 88 B.R. 36, 38 (Bankr.S.D.N.Y.1988). The allowance, and if so, the value of administrative expenses under sections 503(b)(3)(D) and (4) is left to the broad discretion of the bankruptcy judge. *In re Lister,* 846 F.2d 55, 56 (10th Cir.1988). The burden of proof as to the substantial contribution made to the estate rests on the applicant and must be established by a preponderance of the evidence. *U.S. Lines,* 103 B.R. at 429. Creditors must overcome a particularly difficult burden in demonstrating a "substantial contribution" because they are presumed to act primarily for their own interests. *Hooker Investments,* 188 B.R. at 120. Compensation under section 503 is reserved for those rare and extraordinary circumstances when the creditor's involvement truly enhances the administration of the estate. *In re Best Products Co., Inc.,* 173 B.R. 862, 865 (Bankr.S.D.N.Y.1994).

■ As a practical matter, there will often be an overlap of work product and ideas from one lawyer to the next lawyer. Although parts of the proposed Hadiya Plan written by the Marcus Firm may have been utilized by subsequent Debtor's counsel, the Marcus Firm does not hold any patent or copyright on either the specific language used or the elements of the plan of reorganization attributable to its representation. Many components of a plan are common to all plans of reorganization. Even the supposedly unique portions of the Hadiya Plan, which Marcus contends are traceable to its work for Hadiya, do not warrant a finding of substantial contribution in this case. Perhaps the Marcus Firm did articulate and formulate some of the language that survives as part of the Debtor's confirmed plan. Even if whole paragraphs and phrases were "copied" into the confirmed plan, this would not rise to the level of substantial contribution to the Debtor's estate to warrant the requested compensation. Marcus' efforts were expended on behalf of, and for the protection of its client Hadiya. If the Debtor received some incidental benefit from the use of language artfully drafted by Marcus, this is not compensable.

The Marcus Firm concedes that it was paid for all services rendered through May, 1994 including the time expended preparing and filing the Hadiya Plan. Further, the Court reminds Marcus that the Hadiya Plan (which was later merged as a joint plan with one of the Debtor's earlier plans) was not approved by this Court and since the time of its proposal, the Debtor has presented several other plans and finally confirmed a third amended plan of reorganization. *See In re Lister,* 846 F.2d at 57 (development of the only proposed plan and negotiation with creditors on behalf of the proposed plan which was never approved does not constitute substantial contribution). Therefore, this alleged benefit does not qualify as a substantial contribution to the estate in this instance.

The Court has considered the remaining assertions of substantial contribution and, likewise, finds them to be without merit. Even if Marcus introduced the Debtor to a consultant, the Debtor itself was instrumental in hiring the business consultant to assist in its reorganization. The motion to appoint a trustee was denied after lengthy evidentiary hearings conducted one year after Marcus ceased its involvement in the case. There is considerable litigation in adversary proceedings involving the Debtor and its insiders and the Debtor's dispute with its landlord has lingered throughout the pendency of the bankruptcy case.

Although Mr. Preefer may have offered some good suggestions during the course of this case, his primary duty was to act on behalf of Marcus' client, Hadyia. This the Marcus Firm did. Marcus must look to its client pursuant to the retention agreement. If, in their efforts on behalf of their client, the Debtor may have received some incidental benefit as well, this incidental benefit does not rise to the level of substantial contribution to the Debtor's estate which would warrant compensation from the Debtor.

## CONCLUSION

This Court has jurisdiction over the instant application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

Based on the reasons set forth above, this Court concludes that the Marcus Firm is not a creditor of the Debtor, and does not have standing to bring the instant fee application under sections 503(b)(3)(D) and (b)(4) of the Bankruptcy Code. Nor did it provide a substantial contribution which could be compensated from this Debtor's estate, and thus, its application is denied in its entirety.

SUBMIT AN ORDER in accordance with this Decision.