**In re TM CARLTON HOUSE PARTNERS, LTD., Debtor.**

**Bankruptcy No. 88–10774S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 5, 1988.

Joanne Zack, Kohn, Savett, Klein & Graf, Philadelphia, Pa., for Equity Sec. Holders.

Mark S. Lieberman, Chicago, Ill., Marvin Krasny, Philadelphia, Pa., for Skokie.

Cole Silver, Philadelphia, Pa., for Teebesco.

Geoff Veith, Philadelphia, Pa., for Capital Group.

Martin J. Weis, Lawrence G. McMichael, Philadelphia, Pa., for debtor.

Mark J. Packel, Philadelphia, Pa., for Creditors' Committee.

Stephen Raslavich, Philadelphia, Pa., for Bergs.

David Smith, Philadelphia, Pa., for Concap.

James J. O'Connell, Philadelphia, Pa., Ass't. U.S. Trustee.

### MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

The matter before us exemplifies what may appear as overly-harsh consequences which the Third Circuit Court of Appeals has twice recently held must follow from a failure of a professional to obtain court appointment in timely fashion. *In re F/S Airlease II v. Simon*, 844 F.2d 99, 105–08 (3d Cir.1988); and *In re Arkansas Co.*, 798 F.2d 645, 648–51 (3d Cir.1986). We hold that we must deny the Debtor's motion to extend the compensable period of employment of Laventhol and Horwath (hereinafter referred to as "L & H"), as consultants and expert witnesses *nunc pro tunc* to the date that services began because the motion seeking *nunc pro tunc* appointment, as opposed to the motion which merely sought employment of L & H, does not meet the conditions set forth in *Airlease* and *Arkansas*.

As chronicled in more detail in our Amended Opinion addressing disputed aspects of one of the Debtor's motions to extend its use of cash collateral, reported

at 91 B.R. 349, 350–52 (Bankr.E.D.Pa.1988), the instant case was commenced by the filing of an involuntary Chapter 11 petition against the Debtor on March 7, 1988, to which the Debtor ultimately responded by consenting to the entry of an Order for relief on March 31, 1988. On the latter date, the parties all ultimately agreed to terms under which the Debtor could use cash collateral until April 28, 1988. In preparation for a hearing of April 28, 1988, to extend the right to use cash collateral thereafter, the Debtor hired L & H, on April 14, 1988, to perform an appraisal of the Debtor's assets. This hearing ultimately resulted in a further agreement to extend the Debtor's right to use cash collateral until July 19, 1988.

Although the circumstances necessitated L & H's commencement of work immediately, the Debtor and L & H aver, and we find, that a risk of a conflict arising from the representation of the Debtor's first mortgagee, Consolidated Capital Equity Partners (hereinafter "Concap"), by another L & H office prevented the Debtor from filing an application to appoint L & H until the conflict was cleared. Immediately thereafter, on May 10, 1988, the application was filed. At a hearing of June 14, 1988, opposition from several creditors was presented. We entered an Order granting the Application, but expressly stated that it was effective only as of the date of the filing of the application, *i.e.*, May 10, 1988.

There was no objection by the Debtor to the May 10, 1988, date, at that time and no efforts were made to alter or amend this Order in any way until the instant Motion, seeking our approval to appoint L & H *nunc pro tunc* as of April 15, 1988, was filed on October 27, 1988. Admittedly, the instant Motion was motivated by the Debtor's observation that about half of the services for which compensation was sought by L & H in an Application for interim compensation of $37,846.25, originally also filed on October 27, 1988, were performed prior to May 10, 1988. The instant Motion was opposed by Skokie Federal Savings and Loan Association (hereinafter "Skokie"), and by the United States Trustee.

The law in this area has been well-developed by the *Airlease* and *Arkansas* opinions. Appointments of professionals *nunc pro tunc* are permissible, but are reserved for *extraordinary circumstances*. *Airlease*, 844 F.2d at 105 (emphasis in original). Synthesizing the holding in *Arkansas*, the court articulated, 844 F.2d at 105, the following two-part test:

first, the bankruptcy court must find, after a hearing, that the applicant satisfied the disinterestedness requirements of section 327(a) and would therefore have been appointed initially; and, second, the court must, in the exercise of its discretion, determine that the particular circumstances presented are so extraordinary as to warrant retroactive approval. [798 F.2d at 650] [citing *Arkansas*]

Next, in guiding bankruptcy courts in applying the second part of the test, the court reiterated from *Arkansas, id.* at 105–06, that a bankruptcy court must weigh the following factors:

"whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors." *Id.*

However, in *Airlease,* the court went on to examine the weighing of these factors and reversed a granting of *nunc pro tunc* appointment by the bankruptcy court, affirmed by the district court. First, in considering the issue of who bore the responsibility for filing the application, the *Airlease* court acknowledged that, in contrast to *Arkansas,* the professional was not counsel, but a broker whose tardy application was the work-product of the Debtor's counsel. Nevertheless, the factor of the professional's non-responsibility for making the application was held to be neutralized by the professional's sophistication and experience in bankruptcy matters. *Id.* at 107. Secondly, in considering the issue of time pressures, the *Airlease* court also acknowl-

edged that, again in contrast to *Arkansas,* the professional was obliged to provide his services under severe time pressures. Nevertheless, the court held that this factor, too, was neutralized by its holding that the significance of the issue of time pressures was limited to the direct relationship between the requirement for immediate services and the delay in filing the request for appointment. *Id.*

█ We agree that, here, the Order of June 14, 1988, ultimately appointing L & H satisfies the first part of the two-part test. The difficulty arises in meeting the second part of the test, because L & H is emphasizing the same two factors which the *Airlease* court held were neutralized by facts very similar to those present here.

The observations made by the *Airlease* court regarding the significance of the responsibility of the professional to file the application for compensation and time pressures appear at least equally applicable here. L & H is a national accounting firm, having over thirty (30) offices. Its professionals have frequently appeared in our court. It has house counsel in its executive office, which is situated here in Philadelphia. Clearly, L & H is, if anything, more sophisticated and familiar with bankruptcy court requirements for employment of professionals as the professional whose *nunc pro tunc* application was at issue in *Airlease.*

There is no real dispute that it was necessary for L & H to commence the services performed prior to its approval by this court. We would have had no difficulty in finding the application of May 10, 1988, a timely vehicle for seeking appointment retroactive until April 15, 1988.

However, unfortunately, the application of May 10, 1988, was not used as such a vehicle. Contrary to the position of L & H, we believe that it is the delay in the filing of the request for *nunc pro tunc* appointment which must be the subject of our scrutiny. The court, in neither *Airlease* nor *Arkansas,* had to consider whether the delay in filing the original application for appointment, as opposed to the delay in filing the application for *nunc pro tunc*

appointment, was the more significant. In both of those cases, the original application sought *nunc pro tunc* appointment. We believe that the application seeking *nunc pro tunc* approval must be the more significant. *That* is the request in which the dispensation to proceed *nunc pro tunc* is sought.

L & H runs into serious difficulty in the instant fact-pattern when it attempts to justify its complacence with the May 10, 1988, effective date, included in the June 14, 1988, Order and its failure to file the instant motion earlier. We cannot say that a delay of over 5½ months in seeking to advance the effective date of L & H's appointment, not made until the actual request for compensation of services itself was completed and filed and observed to include requests for significant compensation prior to May 10, 1988, was, in any sense of the word, timely. The delay in requesting an earlier appointment date here is arguably less justifiable than the delay in *Airlease,* because both L & H and the Debtor had before them a court order stating definitively that the appointment was only effective as of May 10, 1988.

Creditors such as Skokie, which relied on the May 10, 1988, date of appointment in not further opposing the June 14, 1988, order and, possibly, in assessing other compensation requests filed in the case thereafter, would be unfairly prejudiced if we adjusted the date of appointment to an earlier date now. The element of reliance, we think, is stronger when a date is established by court order than if no application had been filed on behalf of L & H at all until October 27, 1988, and thus no date of appointment had been established. Thus, in considering the element of unfair prejudice, the date of the application in which *nunc pro tunc* approval is sought is clearly the more significant.

Therefore, we believe that, following *Airlease* and *Arkansas,* as we must, we are constrained to deny the instant motion and shall do so in an accompanying Order.