## In re Wademan PETERSON and Janice Kay Peterson, Debtors.

### Bankruptcy No. 87–40192–PKE.

United States Bankruptcy Court,
D. South Dakota, S.D.

Oct. 2, 1992.

---

David L. Nadolski, Quaintance, Johnson, Nadolski & Starnes, Sioux Falls, S.D., for Farm Credit Bank of Omaha.

Charles L. Nail, Jr., Asst. U.S. Trustee, Sioux Falls, S.D.

Bruce J. Gering, Sioux Falls, S.D., for U.S. Trustee.

## CASE SUMMARY

PEDER K. ECKER, Bankruptcy Judge.

The matter before the Court is an Application for Compensation and Reimbursement by Farm Credit Bank of Omaha [hereinafter FCBO] filed by Sioux Falls Attorney David L. Nadolski. FCBO, a secured and undersecured creditor in this Chapter 12 proceeding, made application for reimbursement of fees and expenses out of $19,000 paid to the Chapter 12 Trustee pursuant to a Compromise and Settlement Agreement involving Debtors'. net disposable income entered into between Debtors, FCBO, and the Chapter 12 Trustee.

FCBO believes its post-confirmation activities were instrumental in recovering additional net disposable income which justifies this fee application as an allowed administrative claim under Section 503 of the Bankruptcy Code.

The United States Trustee, through Sioux Falls Attorney Bruce J. Gering, filed an objection to the application for compensation and reimbursement and the motion for its approval. The objection states that Section 503 of the Bankruptcy Code does not permit this fee application to be approved for two reasons. First, the Court did not approve FCBO's activities as required by 11 U.S.C. § 503(b)(3)(B), and, second, the express language of 11 U.S.C. § 503(b)(3)(D) only provides for fee approval of substantial creditor contributions made in Chapter 9 or 11 cases. The fee application in this case involves a Chapter 12 case.

The issue is whether FCBO's motion for approval of its application for compensation and reimbursement should be granted when FCBO spearheaded the discovery and settlement process leading to the recovery of net disposable income for the benefit of all creditors with unsecured claims but when the subsections of 11 U.S.C. § 503(b) do not expressly include applications for substantial creditor contributions in Chapter 12 bankruptcy proceedings.

The Court concludes that FCBO is entitled to be awarded compensation for the reasonable value of the legal services rendered in this case pursuant to Section 503(b). In doing so, the Court finds that the subsections of Section 503(b) are examples of the kinds of claims that may be deemed administrative expenses, but they do not provide an all-inclusive, exhaustive list of such expenses.

## MEMORANDUM DECISION

The matter before the Court is an Application for Compensation and Reimbursement by Farm Credit Bank of Omaha [hereinafter FCBO] filed by Sioux Falls Attorney David L. Nadolski. FCBO, a secured and undersecured creditor in this Chapter 12 proceeding, made application for reimbursement of fees and expenses out of $19,000 paid to the Chapter 12 Trustee pursuant to a Compromise and Settlement Agreement involving Debtors' net disposable income entered into between Debtors, FCBO, and the Chapter 12 Trustee.

FCBO believes its post-confirmation activities were instrumental in recovering additional net disposable income which justifies this fee application as an allowed administrative claim under Section 503 of the Bankruptcy Code. In addition, the Compromise and Settlement Agreement entered into by Debtors, FCBO, and the Chapter 12 Trustee was drafted to allow FCBO to make application without objection from and, in fact, with support of the Chapter 12 Trustee. Without its efforts, FCBO believes Debtors would have resisted any payment to the Chapter 12 Trustee. A memorandum in support of the fee application was filed on behalf of FCBO.

An evidentiary hearing was held, and FCBO presented testimony in support of the motion and provided exhibits summarizing the fee application. The Court took the following issue under advisement: Whether a court may approve a creditor's application for compensation of fees and reimbursement of expenses related to the pursuit of a Chapter 12 debtor's net disposable income on behalf of all unsecured creditors when the plain, express language of 11 U.S.C. § 503(b)(3)(B) requires prior court approval of such creditor activity and when the plain, express language of 11 U.S.C. § 503(b)(3)(D) only authorizes fees for sub-stantial creditor contribution in cases under Chapter 9 or 11.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtors filed a joint Chapter 12 petition for relief on March 30, 1987. Debtors' Chapter 12 plan was confirmed by order entered June 7, 1988,[1] and in June, 1992, a final accounting and exit report were filed. Only FCBO and the Chapter 12 Trustee filed objections to discharge, and in preparing for the hearing on objections to discharge, FCBO served Debtors with a Subpoena Duces Tecum [2] for production of balance sheets and financial statements, farm production records, bank records, and records relative to post-bankruptcy family loan obligations. The hearing on objections to discharge was continued by the Court so that the parties could conduct appropriate discovery, in particular, a Bankruptcy Rule 2004 examination of Debtors. The only parties appearing at the subsequent Bankruptcy Rule 2004 examination were FCBO, Debtors, and the Chapter 12 Trustee.

In a proactive attempt to calculate what it believed was the correct amount of net disposable income, FCBO obtained and reviewed Debtors' relevant financial data. As a result, supplemental objections to discharge were filed, and, eventually, Debtors filed and served an Amended Final Exit Report. Thereafter, negotiations were held between FCBO, Debtors, and the Chapter 12 Trustee, which culminated with a court-approved Compromise and Settlement Agreement whereby Debtors agreed to pay the Chapter 12 Trustee $19,000 to be disbursed to administrative claimants and creditors with unsecured claims.

FCBO has filed this fee application as an administrative claim pursuant to 11 U.S.C. § 503, seeking $13,166.35, or approximately 70% of the amount of net disposable income agreed to by the settling parties.

---

1. The Final Order stated: "Debtors shall pay to the Trustee any remaining excess disposable income remaining at the end of three (3) years, from the date the first payment is due."

2. Debtors resisted by filing and serving a Motion to Quash the Subpoena Duces Tecum. Further resistance was created when Debtors failed to appear at the time set forth in the subpoena and failed to provide the requested documents prior to the hearing date.

The United States Trustee, through Sioux Falls Attorney Bruce J. Gering, filed an objection to the application for compensation and reimbursement and the motion for its approval. The objection states that Section 503 of the Bankruptcy Code does not permit this fee application to be approved for two reasons. First, the Court did not approve FCBO's activities as required by 11 U.S.C. § 503(b)(3)(B), and, second, the express language of 11 U.S.C. § 503(b)(3)(D) only provides for fee approval of substantial creditor contributions made in Chapter 9 or 11 cases. The fee application in this case involves a Chapter 12 case.

The Farmers Home Administration filed a response through United States Attorney Kevin V. Schieffer and Assistant United States Attorney Craig Peyton Gaumer, stating that, while it was unable to clearly state a specific objection to the application, it would hold FCBO to its "burden of proving that payment of attorneys fees for such services are supported by applicable bankruptcy or other federal law and well-grounded in fact."

## ISSUE AND COMPETING ARGUMENTS

The issue is whether FCBO's motion for approval of its application for compensation and reimbursement should be granted when FCBO spearheaded the discovery and settlement process leading to the recovery of net disposable income for the benefit of all creditors with unsecured claims but when the subsections of 11 U.S.C. § 503(b) do not expressly include applications for substantial creditor contributions in Chapter 12 bankruptcy proceedings.

The United States Trustee argues that the Bankruptcy Code provisions offered by FCBO in support of the fee application are inappropriate. The first section offered in support of fee approval is Section 503(b)(3)(B). Section 503(b)(3)(B) states that actual, necessary expenses other than compensation and expenses specified in paragraph (4) will be allowed as an administrative expense if incurred by a "creditor that recovers, after the court's approval, for the benefit of the estate any property

transferred or concealed by the debtor." The United States Trustee asserts that FCBO's application fails under this section since there was no court approval of FCBO's pursuit of Debtors' assets.

The second section offered by FCBO in support of its fee application is Section 503(b)(3)(D), which states that actual, necessary expenses other than compensation and expenses specified in paragraph (4) will be allowed as an administrative expense if "a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, ... [makes] a substantial contribution in a case under chapter 9 or 11 of this title." The United States Trustee points to the limiting language of this section in objection to FCBO's application and states that no courts have "been so bold" as to rule that this section applies to Chapter 12 cases since, on its face, the provision only includes two bankruptcy chapters, and, in fact, both FCBO and the United States Trustee agree there are no cases indicating that Section 503(b)(3)(D) applies to Chapter 12 cases.

The United States Trustee also objects to using the equitable powers of Section 105(a) to approve FCBO's fee application, since the United States Supreme Court, in *Northwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), stated that whatever equitable powers a bankruptcy court has must only be exercised within the confines of the Bankruptcy Code. The United States Trustee asserts that since Congress has entitled certain administrative expenses under Section 503 of the Bankruptcy Code but has limited the entitlement of Section 503(b)(3)(D) to only Chapter 9 and 11 cases, Section 105(a) cannot be used to include Chapter 12 cases. Congress could have, but did not include Chapter 12 or 13 cases, and "that is the reality of section 503(b)(3)(D)." In addition, the Eighth Circuit Court of Appeals has also stated on numerous occasions that Section 105 "does not empower a bankruptcy court to create new substantive rights." *In re NWFX,*

*Inc.,* 864 F.2d 593 (8th Cir.1989). The United States Trustee believes FCBO is seeking new substantive rights within the subsections of 11 U.S.C. § 503(b) and, therefore, FCBO's reliance on Section 105(a) is misplaced. Since there are no Bankruptcy Code provisions which authorize the approval of this fee application, the United States Trustee urges the Court to deny FCBO's application.

In contrast and in support of its application, FCBO relies mainly on what it characterizes as its "substantial contribution" in pursuing and recovering additional net disposable income in favor of the estate and the undersecured and the unsecured creditors. FCBO states that 11 U.S.C. § 503 is designed to promote "meaningful creditor participation" in reorganization cases. The appropriate test is "substantial contribution" with respect to creditor efforts that occurred during all stages of the reorganization process. *In re McLean Industries, Inc.,* 88 B.R. 36, 39 (Bankr.S.D.N.Y.1988). Some of the "zealous" activity claimed by FCBO, which constitutes "substantial contribution" in this case, includes the fact that FCBO was the only unsecured creditor who timely filed objections to discharge; the fact that FCBO was the only party in interest who pressed forward for complete discovery of Debtors' true financial condition; the fact that FCBO insisted on more financial information, arranged for the Bankruptcy Rule 2004 exam, and was the only unsecured creditor who attended the exam; and the fact that FCBO, the prime movant in the net disposable income issue, was "primarily responsible for the satisfactory settlement" which resulted in "a significant benefit on all unsecured creditors."

FCBO admits that there was no prior approval granted by this Court for such activity and, therefore, the technical requirement stated in Section 503(b)(3)(B) has not been met; however, FCBO states this Court has, in a prior decision, overlooked this particular requirement. FCBO refers to *In re Rumpza,* 54 B.R. 107 (Bankr. D.S.D.1985), where the facts proved that an attorney's efforts on behalf of the estate resulted in a benefit to all creditors, and, as a result, the Court allowed the requested compensation even though there had been no prior court approval. The Court held that such creditor actions should be encouraged. *Id.* at 109.

FCBO bootstraps the *Rumpza* rationale and result to the facts of this case relative to Section 503(b)(3)(D): Since the Court previously used its discretion to overlook the "court approval" requirement of Section 503(b)(3)(B), the Court may now use its discretion to overlook the fact that this is a Chapter 12 fee application even though the "clear reading" of Section 503(b)(3)(D) refers only to substantial creditor contribution in Chapter 9 or 11 cases.

In sum, FCBO's position is that FCBO's representative was the real "inspiration" and individual who supplied the momentum and inertia to recover Debtors' net disposable income. And if the Court is unable to approve the fee application under Section 503 of the Bankruptcy Code, FCBO urges the Court to grant approval under the equitable powers of 11 U.S.C. § 105(a). Since FCBO "ran with the ball" in this case, and since the purpose of the Code should be construed to encourage creditor participation, FCBO believes it is appropriate to issue equitable relief under Section 105(a). The Court "may look through form to the substance of a transaction and devise new remedies where those at law are inadequate." *In re Chinichian,* 784 F.2d 1440, 1443 (9th Cir.1986).

## DISCUSSION

■ The Court agrees with the United States Trustee's argument regarding the use of Section 105(a). Both the United States Supreme Court and the Eighth Circuit Court of Appeals have made it very clear that a court must exercise the equitable relief available under Section 105(a) within the confines of the Bankruptcy Code. *Northwest Bank Worthington v. Ahlers,* 485 U.S. at 199, 108 S.Ct. at 965; *In re Ozark Restaurant Equipment Co., Inc.,* 816 F.2d 1222, 1230 (8th Cir.1987); *Johnson v. First National Bank of Montevideo, MN,* 719 F.2d 270 (8th Cir.1983); *In re Cedar Rapids Meats, Inc.,* 117 B.R. 448,

452 (Bankr.N.D.Iowa 1990). Even the statutory language of Section 105 itself suggests that it be used in connection with another Bankruptcy Code section and not exercised simply because it relates to a general bankruptcy concept or objective. 2 L. King, *Collier on Bankruptcy* ¶ 105.01, at 105–4 (15th ed. 1992). Therefore, if the fee application in this case is to be approved, there must be some basis under the provisions of the Bankruptcy Code to allow such approval.

█ The Court also agrees with the United States Trustee when it states that both Sections 503(b)(3)(B) and 503(b)(3)(D) set forth specific scenarios that are clearly identified as allowable administrative expenses, but, when reading Section 503(b) as a whole, it is difficult for the Court to conclude that the subsections of Section 503(b) were intended to exclude every other type of claim from being considered an administrative expense. The preamble of Section 503(b) states: "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, *including—*" Sections 503(b)(3)(B) and 503(b)(3)(D) (emphasis added). In other words, the express, limited situations described in Sections 503(b)(3)(B) and 503(b)(3)(D) are not the only types of actual and necessary expenses that may be deemed administrative claims. The Bankruptcy Code's own rule of construction, provided by 11 U.S.C. § 102(3), states that the words " 'includes' and 'including' are not limiting." Section 102(3) is a codification of *American Surety Co. v. Marotta*, 287 U.S. 513, 53 S.Ct. 260, 77 L.Ed. 466 (1933), where the United States Supreme Court considered the construction and defi-

nition of the word "include," stating, "[I]n definitive provisions of statutes and other writings, 'include' is frequently, if not generally, used as a word of extension or enlargement rather than as one of limitation or enumeration." *Id.* at 516–17, 53 S.Ct. at 261. *See* Historical and Revision Notes, 11 U.S.C. § 102, at 23.

The real, limiting language of Section 503(b) is not the subsections themselves, but, rather, the phrase which states that there shall be allowed administrative expenses "other than claims allowed under section 502(f)." [3] In other words, if a claim is allowed under Section 502(f), then it cannot be an administrative claim under Section 503(b). There are no other words of limitation in this section. The express subsections enacted in Sections 503(b)(3)(B) and 503(b)(3)(D) were specifically identified and "included" as part of Section 503(b) to avoid any confusion as to the administrative status of those particular situations,[4] not to limit all other expenses that might also be considered administrative expenses.

The Court concludes that FCBO's fee application does not fail simply because it does not fit into one of the specifically expressed subsections of Section 503(b). As indicated by the United States Trustee, the United States Supreme Court has stated that where the language of the Bankruptcy Code is plain, the sole function of the courts is to enforce it. *Patterson v. Shumate*, —— U.S. ——, ——, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992); *Taylor v. Freeland & Kronz et al.*, —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The Court notes, too, that priority statutes like the administra-

---

**3.** Section 502(f) states:

In an involuntary case, a claim arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee and the order for relief shall be determined as of the date such claim arises, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 502(f).

**4.** Legislative history indicates there was considerable congressional concern over Section 503(b)(3)(D) relative to ensuring that unofficial and official creditor committees would be compensated for contributions under Chapter 9 and Chapter 11 cases. Hence, the specific language was adopted in Section 503(b)(3)(D) to clearly establish these expenses as administrative. *See* 3 L. King, *Collier on Bankruptcy* ¶ 503.04, at 503–40 n. 83 (15th ed. 1992).

tive claim provisions of Section 503 are to be strictly construed. *In re 1 Potato 2, Inc.*, 71 B.R. 615, 618 (Bankr.D.Minn.1987), *citing Standard Oil Company v. Kurtz*, 330 F.2d 178, 180 (8th Cir.1964). The Bankruptcy Code's own statute regarding rules of construction and the plain meaning of Section 503(b), when read as a whole, make it clear that the list of allowable administrative expenses expressly stated by the subsections is not meant to be limiting or all-inclusive:

> "Actual, necessary expenses, ... incurred ... by a creditor that recovers property for the benefit of the estate, ... by a creditor, ... that makes a substantial contribution to a reorganization or municipal debt adjustment case, ... are all allowable administrative expenses."

Section 503 Historical and Revision Notes at 126. *See* 3 L. King, *Collier on Bankruptcy* ¶ 503.04, at 503–45 n. 77 (15th ed. 1992).

 It is appropriate that FCBO seek its fee approval now that this case is at its conclusion. *In re Financial News Network Inc.*, 134 B.R. 732, 737 (Bankr. S.D.N.Y.1991). In doing so, FCBO carries the burden of proof to show that it recovered property for the benefit of the estate. *In re Bellman Farms, Inc.*, 140 B.R. 986, 995 (Bankr.D.S.D.1991); *In re 1 Potato 2, Inc.*, 71 B.R. at 618; *Matter of Romano*, 52 B.R. 590, 594 (Bankr.M.D.Fla.1985). Extensive participation in a case alone is not enough to compel compensation under Section 503(b), but the testimony and evidence presented to the Court on this record clearly show that FCBO was the entity responsible for recovering additional net disposable income for the benefit of this bankruptcy estate. *In re Bellman Farms, Inc.*, 140 B.R. at 995; *In re McLean Industries, Inc.*, 88 B.R. at 38.

## CONCLUSION

The Court concludes that, pursuant to Section 503(b), FCBO is entitled to be awarded compensation for the reasonable value of its legal services rendered in this case. In doing so, the Court finds that the subsections of Section 503(b) are examples of the kinds of claims that may be deemed administrative expenses, but the subsections are not intended to be an all-inclusive, exhaustive list of such designated expenses.

FCBO's actions resulted in the recovery of additional net disposable income which was a benefit to this estate. Without these efforts, the resolution achieved in this case would not have occurred. Consistent with the Court's previous rulings, such creditor efforts "made on behalf of the estate and resulting in a benefit to all creditors should be encouraged, and the Court will not deny ... compensation on that basis." *In re Rumpza*, 54 B.R. at 109.

The Court shall enter an appropriate order.