**In re Sylvan SCHACHTER, Debtor.**

**Bankruptcy No. 97–12078DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia Division.

Jan. 8, 1999.

John Francis Murphy, Doylestown, PA, for Debtor.

Richard H. Elliott, Aglow, Elliott & Magee, Doylestown, PA, Prior Attorney for Debtor.

Barry A. Solodky, Lancaster, PA, Trustee.

Richard H. Lowe, Jacoby Donner, P.C., Philadelphia, PA, Special Counsel for trustee and Attorney for Lini, Inc.

Frederic Baker, Ass't. U.S. Trustee, Philadelphia, PA.

*OPINION*

DAVID A. SCHOLL, Chief Judge.

*A. INTRODUCTION*

After successfully prosecuting a proceeding ("the Proceeding") objecting to the Chapter 7 bankruptcy discharge of SYLVAN SCHACHTER ("the Debtor"), and objections ("the Objections") to certain of the Debtor's claimed exemptions, per our decision reported at 214 B.R. 767 ("*Schachter I* "), Lini, Inc. ("Lini"), a large unsecured creditor of the Debtor, seeks compensation from the Debtor's estate in two separate pleadings. The first is Lini's motion ("the Motion") for its counsel's fees and costs of approximately $60,000 arising from its 1997 prosecution of *Schachter I,* pursuant to 11 U.S.C. § 503(b)(3)(B). The second is an Application ("the Application") by Lini's counsel, the law firm of Jacoby Donner, P.C. ("Jacoby"), for services performed as special counsel for BARRY A. SOLODKY, the Chapter 7 trustee ("the Trustee"), after the February 6, 1998, effective date of Jacoby's appointment, in the amount of approximately $11,000.

We will allow the Application in the amount of $9661.75, plus costs of $52.92, despite its slightly-belated filing. However, the Motion, seeking, *inter alia, nunc pro tunc* appointment back to June 1, 1997, cannot be granted, because the "extraordinary circumstances" under which *nunc pro tunc* appointment is permissible, *see F/S Airlease II, Inc. v. Simon,* 844 F.2d 99, 105–06 (3d Cir.1988); and *In re LaBrum & Doak, LLP,* 1998 WL 341933, at *1 (Bankr.E.D.Pa. June 25, 1998), have not been proven. Specifically, Lini was responsible for filing the Motion itself, it was under no particular time-pressure to begin service, and the delay in its seeking *nunc pro tunc* approval persisted through a lengthy period of several unsuccessful prior attempts to obtain compensation from the estate for 1997 services until the hearing on the Motion.

*B. PROCEDURAL AND FACTUAL HISTORY*

The Debtor, though married, commenced the underlying case as a voluntary individual Chapter 7 case on February 20, 1997. *Schachter I,* 214 B.R. at 770–71, recites a history of the case through the consolidated trial of the Proceeding and hearing ("the Hearing") on the Objections on September 30, 1997, through the November 10, 1997, decision date. The hearing and at least oversight of post-trial briefing was performed by the Honorable Mary F. Walrath, then an eminently-qualified practitioner at Jacoby who was appointed to the bankruptcy bench of the District of Delaware, effective September 9, 1998.

On April 15, 1997, prior to its initiation of any matters against the Debtor on its own, Lini, per Richard H. Lowe, Esquire, of Jacoby, who had been representing Lini in prepetition federal litigation with the Debtors, sent a seven-page letter to the Trustee suggesting that he challenge the Debtor's discharge and investigate certain of his financial dealings in the year prior to his bankruptcy filing. Although the letter offers assistance to the Trustee and indicates that Lini is committed to taking any appropriate action on the Trustee's behalf, it does not request appointment of Jacoby as special counsel nor express any basis for Lini's assertion of an administrative claim against the Debtor's estate.

Lini's first attempt to seek such compensation was reflected in an application of the Trustee to appoint Jacoby as his special counsel, filed October 30, 1997. When this application was objected to by the Debtor, it was withdrawn by the Trustee on the date of a hearing on the objection, December 9, 1997.

On December 12, 1997, Lini filed what it termed an application for an administrative claim pursuant to 11 U.S.C. §§ 503(b)(3) and (b)(4), which was very similar to the instant Motion. Upon objection by the Debtor, a hearing was scheduled on this matter on January 20, 1998.

It is necessary to quote 11 U.S.C. § 503(b)(3)(B), which reads as follows, to understand the issues discussed at that hearing:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> . . .
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
>
> . . .
>
> (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;
>
> . . .

At that hearing, Lini made clear for the first time, that its application was based on § 503(b)(3)(B), not § 503(b)(3)(D). *See, e.g., In re Beck Rumbaugh Associates, Inc.,* 84 B.R. 369, 371 (E.D.Pa.1988) (§ 503(b)(3)(D) is inapplicable to Chapter 7 cases). The Debtor's counsel raised the presently-significant issue that the Motion could not be approved because Lini had not obtained prior court "approval" or appointment to represent the Debtor's estate. This court, not having researched any pertinent issues, raised the separate issue that the Motion may not be allowable because no sums may had been as yet recovered for the Debtor's estate. When it was established that the application had not been served on all interested parties, the

hearing was continued until February 10, 1998, for service to be made.

In very brief proceedings of February 10, 1998, Judge Walrath announced that the application was being withdrawn without prejudice, explaining that "[t]he [T]rustee has filed an application to employ us as counsel for the [T]rustee and we'll proceed that way." We also indicated that, having researched § 503(b)(3)(B) cases in the interim in preparation for the hearing, we agreed with the Debtor that a prior appointment of Jacoby was a prerequisite for an application under that Code section.

On February 6, 1998, the Trustee had indeed filed a second application seeking Jacoby's appointment as his special counsel, requesting that it be deemed effective as of November 1, 1997. The Debtor opposed this application. After a hearing of March 12, 1998, this application was granted, although it was deemed effective as of only February 6, 1998, the date of the filing of the application. No appeal from that order was taken.

We also noted at that time that the Trustee had not filed the final audit papers on March 1, 1998, as required by an Order of September 4, 1997. Therefore, we also scheduled a status hearing to determine when the Trustee would file the audit papers on March 31, 1998. After that hearing we entered an order of April 1, 1998, setting October 1, 1998, as the date for this filing. The April 1, 1998, order also provided as follows:

> 2. If the Applications and time sheets of the Trustee and the Trustee's professionals are not filed and served by October 1, 1998, the Trustee's commissions may be limited to $500 and all compensation of the Trustee's professionals may be barred. . . .

Jacoby thereafter represented the Trustee as his special counsel in the process of collecting and liquidating certain non-exempt assets of the Debtor's estate, which it claims totaled approximately $88,500. A new adversary proceeding (No. 98–0267) ("the 98 Proceeding"), seeking turnover of certain assets, was filed on May 21, 1998; was reported settled at a trial date of July 22, 1998; and was closed after a settlement whereby the Debtor paid $65,000 to the Trustee was ap-

proved on October 7, 1998. The delay in approval of this settlement apparently caused the Trustee to wait until October 14, 1998, in filing his own application for compensation.

Lini filed the Motion presently before us on October 20, 1998. A hearing on the Debtor's objection to the Motion was originally scheduled on November 3, 1998. At that time, noting that Jacoby had not filed a fee application for compensation as special counsel by the October 1, 1998, deadline, we entered an order requiring all further fee applications to be filed by November 16, 1998; continuing the hearing on the objections to the Motion and an objections to any further fee application filed on December 8, 1998; and putting off the filing of the audit papers until December 31, 1998. After the hearing on December 8, 1998, on the Motion and the Application, which was thereafter filed on November 6, 1998, we allowed the parties until December 18, 1998 (Jacoby), and January 4, 1999 (the Debtor), to file briefs addressing the Motion and the Application; and we again put back the filing of the audit papers, this time until February 1, 1999. We note that the Debtor filed his brief early on December 29, 1998, which Jacoby saw fit to respond to with a reply brief filed on December 30, 1998. *But see In re Jungkurth,* 74 B.R. 323, 325–26 (Bankr.E.D.Pa. 1987), *aff'd sub nom. Jungkurth v. Eastern Financial Services, Inc.,* 87 B.R. 333 (E.D.Pa.1988) (submission of unsolicited reply briefs is strongly disfavored). Appended to this reply brief was an Affidavit of Lowe which attempted to embellish the record by "correcting" the testimony regarding the amount actually paid to Jacoby by Lini. *But see, e.g., In re LaBrum & Doak, LLP,* 227 B.R. 391, 398 (Bankr.E.D.Pa.1998) (efforts to add to a record by means of post-trial submissions are clearly improper).

### C. DISCUSSION

1. *Prior Approval or Appointment of Counsel Is a Prerequisite of a § 503(b)(3)(B) Demand.*

Lini concedes that "some courts" have required prior court approval, in the nature of an appointment by the court to do so, as a prerequisite for a creditor's filing an application to recover compensation for services which benefit the Debtor's estate under § 503(b)(3)(B). Indeed, decisions from other courts so holding include *In re Conty,* 205 B.R. 329, 332 (Bankr.M.D.Fla.1996); *In re Jelinek,* 153 B.R. 279, 286 (Bankr.D.N.D. 1993); *In re Robbins,* 151 B.R. 364, 366 (Bankr.W.D.Va.1993); *In re Kam,* 106 B.R. 207, 209 (Bankr.D.Hawai'i 1989); *In re Fall,* 93 B.R. 1003, 1012 (Bankr.D.Or.1988); *In re Monahan,* 73 B.R. 543–44 (Bankr.S.D.Fla. 1987); *In re Romano,* 52 B.R. 590, 593 (Bankr.M.D.Fla.1985); *In re Kentucky Threaded Products, Inc.,* 49 B.R. 118, 119–20 (Bankr.W.D.Ky.1985); *In re Spencer,* 35 B.R. 280, 281 (Bankr.N.D.Ga.1983); and *In re Casale,* 27 B.R. 69, 70 (Bankr.E.D.N.Y.1983). In addition, decisions from two other judges of this jurisdiction have so held, *In re Washington Lane Associates,* 79 B.R. 241, 243 (Bankr.E.D.Pa.1987) (FOX, J.); and *In re Calumet Realty Co.,* 34 B.R. 922, 925 (Bankr. E.D.Pa.1983) (KING, J.). Finally, we ourselves so held in a decision affirmed on appeal, *In re Humphrey's Pest Control Co., Inc.,* 1990 WL 191859, at \*2 (Bankr.E.D.Pa. Nov. 30, 1990), *aff'd,* 1991 WL 136195 (E.D.Pa. July 18, 1991).

Nevertheless, Lini argues that the language of the statute is unclear as to whether it requires pre-service appointment to precede a § 503(b)(3)(B) application, and that several courts have reached a different result than the aforementioned courts. Regarding the language of the statute, Lini contends that the phrase "after the court's approval" could be read to "modify" the expenses incurred by the creditor, the "approval of the recovery," or the approval of the challenge to the debtors' wrongful actions.

We fail to see the significance of this purported ambiguity to the disposition of the Motion. Lini obtained no approval of this court prior to its incurring expenses *or* obtaining any recovery *or* the filing of the Proceeding and the Objections against the Debtor in furtherance of which it now seeks recovery. The instant Motion was not filed until October 20, 1998, about a year after *Schachter I* was tried and decided. Even the predecessor § 503(b)(3) motion was not filed

until December 12, 1997, also after *Schachter I* was decided.

To the extent that Lini suggests that its delay in filing the Motion was prompted by our statements, at the January 20, 1998, hearing, that Lini might be obliged to actually recover property for the estate before it could obtain a § 503(b)(3) recovery, we disagree. Court approval for services for which compensation from the estate is requested must generally always precede the performance of these services. However, compensation for these services can be allowed only after both an appointment potentially allowing compensation for such services *and* performance of those services has occurred. As the Debtor notes in his brief, Lini appears to have confused the appointment and application process. Our suggestion, at the January 20, 1998, hearing that Lini was possibly obliged to actually recover property for the Debtor's estate before it could make a § 503(b)(3)(B) recovery was not, as Lini suggests, inconsistent with any requirement that Lini be approved before commencing services in furtherance thereof. Our statements did not affect the fact that prior approval may have been required, but only that services had not yet been performed which justified a recovery to Lini, even if it had been properly pre-appointed. If we were correct in our statement that an actual recovery for the Debtor's estate must precede an allowance under § 503(b)(3)(B), this principle would merely constitute another separate obstacle for Lini to overcome to succeed in the Motion.

The cases cited by Lini as reaching different results from the decisions requiring prior approval as a condition for a recovery under § 503(b)(3)(B) cited at page 363 *supra* are *In re Zedda*, 169 B.R. 605 (Bankr.E.D.La.1994); *In re Antar*, 122 B.R. 788 (Bankr.S.D.Fla. 1990); *In re Johnson*, 72 B.R. 115 (Bankr. E.D.N.C.1987); *In re Rumpza*, 54 B.R. 107 (Bankr.D.S.D.1985); and *In re George*, 23 B.R. 686 (Bankr.S.D.Fla.1982). Three of these decisions, specifically *Antar*, 122 B.R. at 790–91; *Johnson*, 72 B.R. at 118; and *George*, 23 B.R. at 687, acknowledge that prior appointment of counsel is generally a prerequisite to a § 503(b)(3)(B) recovery, but they further hold that retroactive or *nunc pro tunc* appointment is appropriate under the circumstances of these cases.

The *Antar* and *George* decisions are also offset by the contrary *Monahan* decision in the same district. The *Rumpza* decision was relied upon by the same court in *In re Peterson*, 145 B.R. 631, 636–37 (Bankr.D.S.D. 1992), a decision reversed at 152 B.R. 612 (D.S.D.1993).

Only the *Zedda* decision remains unscathed by decisions in the same court or on appeal. However, that decision ultimately admits that its result "does not fit squarely within the language of Section (b)(3) and (b)(4)," 169 B.R. at 608, citing *Antar* in support of its nevertheless allowing the creditor's claim on some sort of general equitable principles.

The instant Motion is expressly made under § 503(b)(3)(B), apparently unlike that at issue in *Zedda*. Furthermore, it is not clear where the *Zedda* court finds a basis for its result outside of § 503(b)(3)(B). The result of the primary authority for its conclusion, the *Antar* decision, based its decision solely upon § 503(b)(3)(B) and a finding that a basis for retroactive appointment was appropriate there. 122 B.R. at 790.

We therefore conclude that the weight of authority clearly supports the conclusion that court appointment of counsel must precede any successful application pursuant to § 503(b)(3)(B). Since this result is also supported by the clear language of the applicable statute and all of the prior decisions of this court, there is no basis in logic or in precedent for straying from this result. Hence, Lini's Motion can succeed only if it is able to establish that it is entitled to *nunc pro tunc* appointment under § 503(b)(3)(B).

2. *Lini Has Not Met Its Burden of Establishing that Grounds for Its Nunc Pro Tunc Appointment Exist.*

 Most of the decisions cited by Lini in support of its position are based upon conclusions that the creditor in issue was entitled to a *nunc pro tunc* appointment. Although this may not be true in the jurisdic-

tions in which these cases were decided, the issue of when such appointment is appropriate has been set down in clear and narrow terms by the Third Circuit Court of Appeals in *F/S Airlease, supra*, 844 F.2d at 105–06; and *In re Arkansas Co.*, 798 F.2d 645, 650 (3d Cir.1986). As we recently stated in *LaBrum & Doak, supra*, at *1,

> It is well-established in this Circuit in *F/S Airlease, II, Inc. v. Simon*, 844 F.2d 99, 105–06 (3d Cir.1988); and *In re Arkansas Co.*, 798 F.2d 645, 650 (3d Cir.1986), that appointment of a professional person nunc pro tunc is appropriate only in the following circumstances:
>
> "first, the bankruptcy court must find, after a hearing, that the applicant satisfied the disinterestedness requirements of section 327(a) and would therefore have been appointed initially; and, second, the court must, in the exercise of its discretion, determine that the particular circumstances presented are so extraordinary as to warrant retroactive approval. *Id.* at 650.
>
> To guide the bankruptcy court in the exercise of its discretion regarding the existence of 'extraordinary circumstances,' we directed it to consider such factors as: whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors."
>
> *Id.*

In its post-hearing submission, Lini emphasizes the strength of its satisfaction of the requirements for appointment of professionals generally due to the merit of its cause and the high integrity of Judge Walrath. Indeed, these requirements must be satisfied to support a *nunc pro tunc* appointment and do appear satisfied here. However, Lini offers much less supportable contentions when it argues that the "extraordinary circumstances" need not be proven by it here because a § 503(b)(3)(B) appointment may not be warranted until counsel has been engaged

and produces a result. As we noted at page 364 *supra*, this reasoning incorrectly confuses the process of appointment with the process of obtaining compensation for services after appointment.

We believe that the standards for *nunc pro tunc* appointment articulated in *F/S Airlease* and *Arkansas* apply in all circumstances where such appointment is requested. The fact that a § 503(b)(3)(B) applicant must also establish a modicum of success to obtain compensation does not warrant a slacking in application of the *nunc pro tunc* standards in considering a § 503(b)(3)(B) appointment. If anything, in such applications, where a creditor is seeking extraordinary and unusual relief allowed to it by the Code only in circumscribed situations, the need to strictly apply the "extraordinary circumstances" criteria set forth in *F/S Airlease* and *Arkansas* should be heightened.

As might be expected when we note Lini's attempt to dodge same, it is quite apparent that Lini cannot satisfy the "extraordinary circumstances" criteria set forth in *F/S Airlease* and *Arkansas*. Lini itself had the full responsibility of filing its own § 503(b)(3)(B) motion. The presence of the pre-eminent Judge Walrath as the counsel responsible for Lini's filings eliminates any possible claim that the appointment process was overlooked due to excusable ignorance. If, as Jacoby suggests, Judge Walrath was unaware of the prior appointment requirement, that point is unproven. The colloquy of February 10, 1998, appears to indicate that she abandoned the request for compensation from the Debtor's estate for litigating *Schachter I*.

There was no time pressure which kept Lini from filing its application between the date of its April 15, 1997, letter to the Trustee and its filing of the Proceeding and Objection on June 1997, or at any time prior to performance of any of the services itemized in the Motion.

■ With respect to the delay factor, we begin by noting that it is the delay in filing the *nunc pro tunc* request itself which is significant for *F/S Airlease* and *Arkansas* purposes, not the delay in filing the application for appointment. *See In re TM Carlton*

*House Partners, Ltd.*, 93 B.R. 875, 877 (Bankr.E.D.Pa.1988). Thus, it is the delay from May 1997 to the present in making the *nunc pro tunc* application itself which must be considered. Consideration of the delay factor brings to the fore the series of fits and starts by Lini to attempt to recover the alleged costs of litigating *Schachter I* from the Debtor's estate. First, appointment of Jacoby as special counsel of the Trustee was sought. When this application was abandoned by the Trustee, Lini did not appear to argue that the application should nevertheless be considered. Next, the application initially invoking § 503(b)(3) was filed, only to be withdrawn, expressly in favor of a renewed application for appointment of Jacoby as the Trustee's special counsel. This renewed application sought appointment as special counsel retroactive only to November 1, 1997, subsequent to the time in which most of the services referenced in the instant Motion had taken place. In any event, we allowed Lini's appointment effectively only as of February 6, 1998, a determination which was not appealed.

At this point, it seemed clear to us that Jacoby, per Judge Walrath, had resigned itself to not pursuing compensation for services in prosecuting *Schachter I* from the estate. The renewed application for appointment as special counsel was expressly designated by Judge Walrath, on February 10, 1998, as the substitute for invocation of § 503(b)(3)(B). When *nunc pro tunc* appointment of the application for special counsel was denied, a strong case could be made that the law of the case, *see, e.g., Arizona v. California*, 460 U.S. 605, 618 & n. 8, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (rule of law decided by a court should govern the issue in subsequent stages of the same case unless the prior decision was clearly erroneous and works a manifest injustice), precluded any further attempts by Lini, such as the instant Motion, to obtain *nunc pro tunc* appointment on behalf of the estate. Thus, we were quite surprised when the Motion appeared and Lini exhibited such persistence in pursuing it in the face of our consistent discouragement.

Further, we note that the request for *nunc pro tunc* appointment itself appears to come as an afterthought by Lini. No such relief is requested, either by name or in kind, in the Motion itself. Nor was a separate motion for *nunc pro tunc* appointment ever filed. The issue arose only because it became obvious to Jacoby in the course of the hearing of December 8, 1998, that such appointment was necessary, even though it had not, until that time, been requested. We note that, as of February 10, 1998, Jacoby was on explicit notice that this court believed that prior appointment was a prerequisite of a § 503(b)(3)(b) claim. The delay from *that* date to December in making the *nunc pro tunc* application is, in itself, impossible to justify.

At this point, the seemingly endless series of attempts by Lini to achieve the result of receipt of compensation for services performed in prosecuting *Schachter I* have destroyed any equities in its favor in doing so. The Debtor is in the unenviable position of being denied a discharge, yet being subject to loss of nonexempt property as a result of his bankruptcy filing. Irrespective of Lini's continuous reiteration of the Debtor's "bad acts" which it credits itself for bring to light, we would point out that it is not necessarily equitable to add that the Debtor must also finance the litigation which brought him to this state. In our experience, § 503(b)(3)(B) motions are exceedingly rare, because the success in litigation which deprives debtors of what is normally their right is its own reward. When efforts to make the Debtor pay further are attempted, depleting the Debtor's resources just to defend same, and considering further the significant statutory timing deficiencies in the filings, the equities in favor of compensating Lini for its services evaporates, irrespective of the Debtor's culpability and the bountiful fruits of Jacoby's labors. We therefore conclude rather easily that Lini is not entitled to *nunc pro tunc* appointment under § 503(b)(3)(B) by application of the clearly-established standards for such appointment in this Circuit. Since the Motion was filed well after the services were provided and *nunc pro tunc* appointment was not even then pursued until the hearing and briefing on the Motion occurred, application of these standards requires our denial of the Motion.

3. *Jacoby Is Entitled to Most of the Compensation Sought in the Application.*

The Debtor opposes the Application, in which Jacoby seeks compensation of $10,-867.50 and reimbursement for costs of $52.92 incurred by it in performing its services as special counsel to the Trustee, on two general bases: (1) the Application was not filed until after the October 1, 1998, bar date; and (2) the request is, if allowable at all, excessive, and only $3981.50 in compensation plus the $52.92 costs are properly allowable.

■ We are not prepared to enforce the October 1, 1998, bar date language in this instance. We begin by noting the precatory language of paragraph two of the Order, quoted at page 6 *supra.* Thus, only if there were no explanation for the late filing would we have eliminated Jacoby's compensation or limited the Trustee's compensation to $500 on this basis. The delay in finalizing the settlement of the 98 Proceeding, plus the relatively short delay in filing the Application, are sufficient explanations to cause us to stay our hand in denying or even reducing the Application on that basis. We also note that the Debtor did not object to the Trustee's late application, and we allowed it, albeit that we reduced the Trustee's requested commission of $7400.08 to $4800.[1]

The objections of the Debtor to specific entries on Jacoby's fee application were put forth in a clear and favored format. They were broken into five categories which were marked on each of the disputed entries, *i.e.,* (1) time spent on applications for its appointment and fee applications; (2) excessive time; (3) excessive rate for services performed; (4) duplicative services; and (5) "lumping" of services described in entries. Nevertheless, we do not agree with the substance of most of the objections.

■ We agree that time spent on preparation of fee applications should not be compensated. We do not read the language of 11 U.S.C. § 330(a)(6) ("[a]ny compensation awarded for the preparation of a fee application still be based on the level and skill reasonably required to prepare the application") as mandating compensation for preparation of fee applications and thus as overruling our decision in *In re Shaffer-Gordon Associates, Inc.,* 68 B.R. 344, 347–50 (Bankr. E.D.Pa.1986), followed consistently by us thereafter, that such services are not generally compensable from a Debtor's estate. However, we have never extended this policy to precluding time spent on counsel's time expended in obtaining its appointment or that of another professional. We also agree that time entries which are "lumped" and are not sufficiently specific in describing the services performed or which describe services which appear excessive for the particular task referenced merit disallowances. *See, e.g., In re St. Joseph's Hospital,* 102 B.R. 416, 418 (Bankr.E.D.Pa.1989); and *In re Amatex Corp.,* 70 B.R. 624, 627–28 (Bankr. E.D.Pa.1985). However, not many of the entries are deficient in this respect.

■ Thus, most of the entries on the Application stand up to the Debtor's criticisms. We will disallow only the following services billed by Judge Walrath:

2/10/98 Attend hearing on Application for Fees .5

---

[1] This reduction was based principally on the fact that the Trustee's barely-legible and untotalled time sheets did not justify the maximum commission sought. *See In re Roderick Timber Co.,* 185 B.R. 601, 605–07 (9th Cir. BAP 1995); and *In re Samson Industries, Inc.,* 108 B.R. 545 (Bankr.E.D.Pa.1989) (trustee's commissions must be supported by time sheets). We also note that a paralegal performed certain trustee services which, while not disallowable *per se,* for this reason, cannot augment the 11 U.S.C. § 326(a) cap. *See In re Jenkins,* 130 F.3d 1335 (9th Cir.1997). We allowed the Trustee $150 per hour for 32 hours of compensable services.

Our award also reflects some dissatisfaction in the Trustee's provision of services. His failure to promptly and appropriately respond to Lini's April 15, 1997, letter; his withdrawal of the initial of the initial application to appoint Jacoby as his special counsel without explanation; his general abdication of his duties to Lini; and his reluctance to appear at hearings were among his shortcomings. The Trustee has pointed out that his offices are in Lancaster and trips to this court, as well as to Bucks County to conduct the meeting of creditors and discovery, were a hardship to him. This explanation may have some merit. We strongly recommend that the United States Trustee appoint locally-based trustees in all cases.

2/17/98 Inter-office strategy *re* application for special counsel appointment (½ deducted) .25

4/8/98 & 4/9/98—Draft of demand letter to Debtor (.3 disallowed of 1.3 hours requested) .3

5/20/98 Revise all complaints and demand letters (disallow½ or 1.0 in light of considerable other hours spent on drafting) 1.0

6/16/98 Further revisions of complaints, preparation of other documents, conferences with counsel (disallow 1.5 of 3.5 hours due to lumping and vagueness of descriptions of services) 1.5

8/10/98 Draft fee petition and revise bill 1.0

TOTAL DISALLOWANCES 4.55

4.55 hrs. × $265/hr = $1205.75 disallowed

Total requested $10,867.50

Disallowed 1,205.75

Net allowance $ 9,661.75

The Application is therefore allowed in the amount of $9661.75 plus the $52.92 undisputed reimbursement of costs.

### D. CONCLUSION

An order consistent with the decisions articulated in this Opinion will be entered.

### ORDER

AND NOW, this 8th day of January, 1999, after a contested hearing of December 8, 1998, on the Motion of Lini, Inc. for Allowance of an Administrative Claim ("the Motion") and the Application of Special Counsel of the Trustee for Compensation ("the Application"), and upon consideration of the parties' respective post-hearing submissions relevant thereto, it is hereby ORDERED AND DECREED as follows:

1. The Motion is DENIED.

2. The Application is GRANTED in substantial part. It is hereby ORDERED that Jacoby Donner, P.C. is allowed compensation

in the amount of $9661.75 for actual and necessary services rendered by it on behalf of the Trustee and $52.92 for actual and necessary expenses incurred by it in rendering said services in the time period from February 6, 1998, through September 8, 1998.