**In re Ronnie A. BLOUNT, Debtor.**

**No. 97–11941.**

United States Bankruptcy Court, M.D. Louisiana.

May 1, 2002.

Clay J. LeGros, Metairie, LA, for Whitney National Bank.

J. Michael Millican, Baton Rouge, LA, for Ronnie A. Blount.

Dwayne M. Murray, trustee.

### *REASONS FOR DECISION*

LOUIS M. PHILLIPS, Bankruptcy Judge.

Before the Court are the objections of the trustee, Dwayne Murray ("Trustee"), and the debtor Ronnie Blount ("Debtor"), to the unsecured claim of Whitney National Bank ("Whitney"). The unsecured claim, for a deficiency over the credit given through a post-petition foreclosure upon the property securing the claim, includes post-petition interest and attorney's fees. Also before the Court is the (alternative) request by Whitney that it or its lawyer be awarded attorney's fees under 11 U.S.C. § 503(b)(3)(B), because of the efforts of counsel for Whitney in discovering an unscheduled asset of the Debtor that the Trustee has now liquidated (a personal injury claim of the debtor that has generated recovery sufficient to pay all claims and to return a surplus). This request was made after the Court heard the objections to the claim of Whitney, and made in response to the Court having offered at that hearing its understanding of the absence of legal basis for post petition interest on unsecured claims, except for that required under section 726(a)(5), or for the awarding of post petition attorney's fees upon unsecured claims as part of the claim. Because the request for attorney's fees would reduce the surplus to be returned to the Debtor, the Debtor has objected to the claim.

The Court has decided to issue this opinion because of the confusion within the case law concerning the circumstances under which an award under section 503(b)(3) or (4) can be made, and also because it has come to understand section 503(b)(3) as a section in the Bankruptcy Code that provides the Court with statutory authority to confer standing upon creditors in chapter 7 cases to act for the estate to recover property for the estate in certain limited factual situations.

For reasons set forth below, the Court sustains the trustee's and Debtor's objections to the Whitney claim, and further, fixes the Whitney claim at an amount that equals the claim as of the petition date, less a credit for the foreclosure value of the collateral sold, and further, orders the claim be paid interest under 726(a)(5). Also, the Court denies the request for attorney's fees under 503(b)(3) or (4).

## I. BACKGROUND

The Debtor filed a petition under Chapter 7 of the Bankruptcy Code [1] on September 11, 1997. After examining the Debtor's schedules and statement of financial affairs, and after having examined the Debtor at the first meeting of creditors,[2] the Trustee determined that no assets or other property would be available to satisfy claims of creditors. Accordingly, the Trustee filed a Report of No Distribution on January 30, 1998. Thereafter, this Court issued an Order Closing Estate which was entered the same day.

At the time the Debtor filed for relief, Whitney held a first mortgage on the immovable (real) property that was the residence of the Debtor and his ex-spouse (the

---

1. Title 11, United States Code, § 101, et seq.

2. 11 U.S.C. § 341(a). All further references to statutory provisions are to Title 11, United States Code, unless provided otherwise.

"Collateral"). Sometime after the case was filed, Whitney foreclosed on the Collateral.[3] The foreclosure sale of the Collateral netted, or generated, a credit against the amount due Whitney, of $26,674.33.

This sum was less than the amount due. The record is not clear as to how much was due Whitney as of the petition date. However, the Debtor scheduled Whitney's claim at $37,911.54.[4] Because the Court has no other information against which to test this value, the Court concludes the Debtor accurately scheduled Whitney's claim.

By the time that Whitney had executed on the Collateral, the Debtor had received a discharge. Therefore, Whitney brought a deficiency action solely against the Debtor's ex-spouse.[5] Apparently, during the pendency of that action, the Debtor's ex-spouse informed counsel for Whitney that the Debtor had pending a substantial personal injury claim which arose from injuries sustained by the Debtor pre-petition.[6] Counsel for Whitney then embarked upon a quest to verify this information. After a lengthy investigation, counsel for Whitney successfully determined that the Debtor was, in fact, a plaintiff in a class action lawsuit which had been settled,[7] resulting in a payment due the Debtor of $241,651.37. Counsel for Whitney then informed the Trustee of the existence of this asset.

Thereafter, on the Trustee moved to reopen the case. After the case was reopened, the Trustee successfully collected $76,000.00 from the Debtor. This sum is enough to pay all creditors, with interest, plus a substantial surplus to be remitted to the Debtor.

After the case was reopened to administer the settlement proceeds, Whitney filed a proof of claim, asserting an unsecured balance due in the amount of $21,148.33. This amount was calculated, the Court finds, as follows:

| | |
|---|---|
| Principal Balance: | $35,094.25 |
| Plus Interest through 3/24/99 | $ 3,163.08 |
| Plus Attorney's Fees: | $ 9,564.53 |
| Sub-total | $47,822.66 |
| Less Foreclosure Sale | $26,654.33 |
| **Total** | **$21,148.33** |

The Trustee's final report proposed to pay this claim, plus interest pursuant to § 726(a)(5) (amounting to $3,061.33) from the petition date. The total payment to Whitney as proposed by the Trustee was $24,209.63. The Debtor objected to the Trustee's Final Report, suggesting that the proposed interest from the commencement date was excessive, because Whitney's claim already included interest. Subsequently, the Trustee objected to the

---

3. The record is not clear as to the exact date that Whitney began executory proceedings against the collateral.

4. The Debtor actually scheduled the claim as owing to Louisiana National Security Bank. Whitney appears to be the successor-in-interest to Louisiana National Security Bank's mortgage on the Collateral.

5. Obviously, a suit against the Debtor would have violated the Debtor's discharge. See, § 524(a)(2). However, a suit against the Debtor's **ex-spouse** did not, because § 524(a)(3) does not apply once the community has been terminated.

6. The Debtor did not schedule this asset or list it on his statement of financial affairs. The propriety of this omission, however, has not been placed before the Court. This court has ruled that the entirety of a pre-petition personal injury claim of the debtor is property of the bankruptcy estate, and is not exempt. See, In re Ballard, 238 B.R. 610 (Bankr. M.D.La.1999).

7. The case was settled without court authority because the settlement occurred before the discovery of this asset by the Trustee.

Whitney's claim, and offered a revised Final Report which proposed a distribution to Whitney of $22,267.18. The Debtor, through counsel, agreed to the amended distribution, while Whitney did not.

At the hearing on these objections, in response to comments on the matters by the Court, counsel for Whitney requested leave to file a request for attorney's fees under 11 U.S.C. § 503(b)(4), which was granted. The request has been filed, and the Debtor objected to the attorney's fees request.

## II. WHITNEY'S CLAIM

■ The Whitney claim, as of the petition date, was both a secured claim to the extent of the value of the collateral, and an unsecured claim for the remaining indebtedness over the value of the collateral.[8] For purposes of claim allowance, the Court finds the value of the Collateral to Whitney was $26,674.33, the amount received by Whitney through the foreclosure process. The Court further finds that the amount of Whitney's claim, as of the petition date, was $37,911.54, the amount scheduled by the Debtor. Creditors holding unsecured claims are not entitled, as a component of the allowed unsecured claim, to unmatured interest.[9] Because Whitney was undersecured, it is not entitled to post-petition interest on its secured claim as interest can only accrue to the extent

the collateral will permit.[10] Because attorney's fees that are unliquidated as of the petition date are also provided for only by 506(b), to the extent the collateral can pay, Whitney is not entitled to have attorneys fees comprise a part of its unsecured claim. Accordingly, the Court finds that as of the petition date, Whitney held a secured claim of $26,654.33, the value of the Collateral, and an unsecured claim for $11,237.21, the difference between the amount of the debt and the value of the Collateral.[11]

■ The Trustee has collected an amount greater than that necessary to pay all filed claims, and will have a surplus to be returned to the Debtor.[12] Under the Bankruptcy Code, before the Debtor is entitled to distribution of the surplus, creditors whose claims are to be paid under §§ 726(a)(1)–(4) are entitled, under § 726(a)(5) to be paid interest on their claims, at the legal rate, from the date of the commencement of the case.[13] The legal rate as of September 11, 1997, the petition date, was 5.60%. Therefore, the allowed unsecured claim of Whitney (against the bankruptcy estate) of $11,237.21 is to bear interest from September 11, 1997 at the rate of 5.60% per annum.

The Court recognizes that its analysis is completely different from that offered by the parties, and greatly reduces the claim

---

8. *See*, § 506(a) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.")

9. *See*, § 502(b)(2).

10. *See*, § 506(b).

11. Because the ex-spouse is an "ex," the "split discharge" under § 524(a)(3) does not

apply. *See*, § 524(a)(3) (the split discharge terminates upon, and does not apply, at the moment that a community estate is terminated after bankruptcy). Therefore, this opinion only relates to Whitney's claim against the estate of the Debtor, and not to Whitney's claims against the Debtor's ex-spouse.

12. *See*, § 726(a)(6).

13. *See*, *In Re Vogt*, 250 B.R. 250 (Bankr. M.D.La.2000), and cases cited therein.

of Whitney below that which the Debtor's counsel advised the Trustee was acceptable. However, the Trustee's duty is to the estate, and to the law, and the objection to the claim of Whitney is pending for decision, with the aforementioned facts having been placed before the Court. Therefore, the Court the Court holds that the claim of Whitney is an allowed unsecured claim in the amount of $11,237.21, plus interest at 5.6% per annum from the date of the petition.

## III. WHITNEY'S SEPARATE CLAIM FOR ATTORNEY'S FEES

■ The Debtor also objects to the request by counsel for Whitney for attorney's fees under § 503(b). Whitney's counsel requests $6,000 in attorney's fees under § 503(b)(4), which allows compensation to attorney's if the creditor could have an allowed claim for expense reimbursement under § 503(b)(3).[14] Section 503(b)(3), allows as administrative expenses the actual, necessary expenses incurred by a creditor through either: (1) filing an involuntary petition against a

debtor; (2) recovering property, after court approval, transferred or concealed by a debtor; (3) the prosecution of a criminal offense relating to the bankruptcy case or the business or property of the debtor, or; (4) making a substantial contribution in a case under chapter 9 or 11 of the Bankruptcy Code.[15]

If a creditor would have its expenses allowed under any one of the sub-provisions of § 503(b)(3), that creditor can be allowed administrative expense status under § 503(b)(4), for claims for attorney's fees incurred by that creditor in connection with the circumstances that gave rise to the claim under § 503(b)(3). In this instance, Whitney did not file an involuntary petition against the Debtor, did not participate in criminal proceedings arising from the case or from the business or property of the Debtor, and, as the case is a chapter 7 case, the "substantial contribution" provision of § 503(b)(3)(D) inapplicable.[16] Thus, the only provision which possibly applies is § 503(b)(3)(B), which entitles a creditor who recovers property

---

14. § 503(b)(4) provides:
   (b) After notice and a hearing, there shall be allowed administrative expenses ... including—
   \*\*\*
   (4) reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

15. *See,* § 503(b)(3). Sections 503(b)(3)(A)–(D) reads in pertinent part:
   (b) After notice and a hearing, there shall be allowed administrative expenses, ... including—
   \*\*\*

   (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
   (A) a creditor that files a petition under section 303 of this title;
   (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;
   (C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;
   (D) a creditor ... in making a substantial contribution in a case under chapter 9 or 11 of this title.

16. Furthermore, Whitney is not a custodian superseded under § 543, nor is it a member of a committee appointed under § 1102. *See,* §§ 503(b)(3)(E), (F).

transferred or concealed by a debtor, in certain circumstances, to allowance of administrative expense status for the expenses incurred in the recovery of property for the estate.

The Debtor objected to the claim for attorney's fees under § 504(b)(4), arguing that under § 503(b)(3)(B), for an expense to be allowable, Whitney must have obtained prior court approval before embarking upon recovery of property. Because Whitney did not obtain court approval prior to initiating its efforts to recover property, Whitney is not "an entity whose expense is allowable" under § 503(b)(3)(B), and thus, attorney's fees for Whitney's counsel are not allowable under § 503(b)(4).

Section 503(B)(3)(B) reads:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

\*\*\*

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

\*\*\*

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor . . .

Contrary to the interpretation posed above, this Court agrees with the majority of the courts which have opined on the matter, that the correct reading of § 503(b)(3)(B) mandates court approval prior to initiation of the efforts directed at recovery of the property transferred or concealed by the debtor.[17] Section § 503(b)(3)(B) is attainable for pursuing discharge denial and exception objections, and requires prior court approval, at least before "the recover"—which will only be contributed to by the creditors. The court leaves open the "nunc pro tunc" approval possibility); *In re Lagasse,* 228 B.R. 223, 225 (Bankr.E.D.Ark. 1998) (the court denies reimbursement for fees and expenses arising in the prosecution of a discharge action that resulted in the settlement of the discharge action and payment into the estate of $20,000, because of the absence of prior court approval of the action); *In re Conty,* 205 B.R. 329, 331–332 (Bankr.M.D.Fla.1996) (the court sets forth a prior approach requirement but also states that the actions of a creditor who objected to the debtor's claim of exemption "were not connected to any property transferred or concealed by the debtor"); *In re Monahan,* 73 B.R. 543, 544 (Bankr.S.D.Fla.1987) (the court denies reimbursement arising from the prosecution of an objection to a claim of exemption for the "primary reason" that court approval was not obtained before instituting the action. Secondarily, the court recites that the property made subject of the exemption claim and objection thereto was not property concealed

17. Cases hold that a creditor must seek court approval prior to acting to recover property for § 503(b)(3)(B) to allow reimbursement of expenses: *See, In re Romano,* 52 B.R. 590, 593 (Bankr.M.D.Fla.1985) (the court assumes the possibility of awarding expenses and fees, for actions such as obtaining a denial of discharge that ultimately generates recovery of property by the trustee, but requires prior court approval); *In re Kentucky Threaded Prods., Inc.,* 49 B.R. 118, 119 (Bankr.W.D.Ky. 1985) (the court incorrectly pronounces a prior court approval requirement when fees and expenses are requested under § 503(b)(3)(D), which contains no such requirement); *In re Spencer,* 35 B.R. 280, 281 (Bankr.N.D.Ga. 1983) (the court assumes the right to recover expenses and fees under § 503(b)(3) and (4) if property is recovered by the trustee as a result of the bringing of a discharge action, but requires prior approval); *Lazar v. Casale (In re Casale),* 27 B.R. 69, 70 (Bankr.E.D.N.Y. 1983) (court precludes fees and expenses for the bringing of a discharge complaint because, unlike Section 64(a)(3) of the Bankruptcy Act of 1898, the Code requires prior court approval); *In re Schachter,* 228 B.R. 359, 364 (Bankr.E.D.Pa.1999) (the court assumes that reimbursement under

503(b)(3)(B) requires, first, that the status of the party seeking administrative expense recovery be a creditor of the debtor. Second, the statute requires that the creditor be one, "that recovers ... any property transferred or concealed by the debtor."[18] Third, the statute commands that the recovery of property transferred or concealed by the debtor be "for the benefit of the estate."[19] The statute also dictates a fourth requirement, court approval. The court approval requirement is susceptible of two readings. One is that creditors are free to pursue recovery of property transferred or concealed by a debtor for the benefit of the estate, but to be entitled to administrative priority status for expenses, must bring the recovery to the court for approval. This reading conjures image of a horde of creditors deputized from the inception of the case, ranging out in the countryside recovering what they can find and bringing it to the court to be checked in (approved) before tossing it into the larder. The problem with this reading

stands in contrast to the overall structure of the Code.

The second reading of the court approval requirement is, of course, that to become a "creditor that recovers," a creditor must first obtain the court's approval to initiate the process by which the property is recovered. Otherwise, because of the trustee's standing to recover, a creditor that recovers with no standing to prosecute an action designed to recover property cannot be the party who brings the recovery to the court for approval. Because of the trustee's standing to recover "property transferred or concealed by the debtor," independent creditor standing as a matter of equitable authority is not available to allow a creditor to initiate and prosecute a recovery action.

The United States Supreme Court recently reviewed standing in the bankruptcy context in *Hartford Underwriters Insurance Company v. Union Planters Bank*.[20] In *Union Planters*, the Supreme Court determined that the Bankruptcy

---

or transferred by the debtor); *In re Jelinek*, 153 B.R. 279, 286 (Bankr.D.N.D.1993) (the court correctly concludes that prior court approval is not required for claims under § 503(b)(3)(D), but only for claims under § 503(B)(3)(B)); *In re Fall*, 93 B.R. 1003, 1012 (Bankr.D.Or.1988) (the court requires pre-approval and, in fact, grants approval to pursue recovery of assets concealed).

*But see, In re Zedda*, 169 B.R. 605 (Bankr. E.D.La.1994); *In re Antar*, 122 B.R. 788 (Bankr.S.D.Fla.1990); *In re Rumpza*, 54 B.R. 107 (Bankr.D.S.D.1985); *In re George*, 23 B.R. 686 (Bankr.S.D.Fla.1982); *In re Johnson*, 72 B.R. 115 (Bankr.E.D.N.C.1987). These cases acknowledge that prior approval is generally a requirement for reimbursement under § 503(b)(3)(B), but hold, however, that retroactive, or *nunc pro tunc* approval is appropriate under certain circumstances. As will be discussed herein, failure by Whitney to obtain this Court's approval prior to expending efforts to recover proceeds of the debtor's personal injury settlement is not the sole reason for denying Whitney's application for re-

imbursement of attorney's fees. Therefore, it is not necessary for this Court to decide whether retroactive approval is appropriate in this case or whether it is authorized under the statute. The Court notes, however, that § 503(b)(3)(B) expressly provides that prior approval is necessary, and that the subsection contains a grant of authority to confer derivative standing upon a creditor. No standing means no action can be pursued. Because the code expressly limits standing to the trustee unless derivative standing is granted by the court, it is difficult to swallow the notion that there can be a benefit gained from a party without standing pursuing an action that cannot be pursued because the party has no standing. However, the Court need not address the issue here.

**18.** § 503(b)(3)(B).

**19.** *Id.*

**20.** 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)

Code's use of the word "trustee" in certain provisions, limits standing to seek recovery under those provisions solely to the trustee.[21] Although *Union Planters* specifically dealt with only the question of whether a creditor has independent standing to use the collateral surcharge provisions of § 506(c), the language and rationale of the opinion seemingly have application to all provisions of the Bankruptcy Code wherein the party authorized to seek recovery (to act) is limited to the trustee. Indeed, the *Union Planters* rationale has been expanded beyond the confines of § 506(c).[22]

In *Union Planters*, the Supreme Court noted, but did not explicitly rule upon the prospect of "derivative standing," i.e., allowing creditors to pursue actions in the stead of the trustee, if the trustee either refuses or fails to act.[23] Despite the Supreme Court's mention of the possibility of derivative standing in *Union Planters*, this Court infers from the Supreme Court's language, in *dicta*, that the Court views "derivative standing" as a judicial concoction or equitable gloss upon the Code.[24] Though speaking in *dicta*, the Supreme Court at least questions the validity of a judicially created standing doctrine designed to get around the plain language of the Bankruptcy Code.

In addition to § 506(c), the trustee (and debtors-in-possession because of § 1107) is the only party authorized to bring avoidance actions under Sections 544, 545, 547, 548, and 549.[25] Accepting the *Union Planters* rationale that the Bankruptcy Code's use of the phrase "the trustee may" or "the trustee shall," means *"only* the trustee may" or *"only* the trustee shall," standing to recover property transferred or concealed by the debtor, as established by these code provisions, is limited solely to "the trustee." Additionally, the trustee, who is the party charged with administration of the estate, is the party with standing to pursue actions arising under nonbankruptcy law if such actions are estate property.

However, § 503(b)(3)(B) provides expressly for reimbursement of recovery expenses to a "creditor that recovers ... any property transferred or concealed by the debtor." How can the creditor be a "creditor that recovers" if standing to recover is held solely by the trustee? The only way that § 503(b)(3)(B) has any effect is if a court is empowered to authorize standing to parties other than the trustee, i.e., creditors, so that those parties may recover property "transferred or concealed by the debtor." If a bankruptcy court is without power to judicially confer standing on a

21. *See, Union Planters,* 120 S.Ct. at 1947 ("The question thus becomes whether it is a proper inference that the trustee is the only party empowered to invoke the provision. We have little difficulty answering yes.").

22. *See, e.g., Stangel v. United States (In re Stangel),* 219 F.3d 498 (5th Cir.2000) (debtor does not have standing to avoid tax lien under § 545, because standing is statutorily limited solely to the trustee.); *Educational Credit Management Corp. v. McLeroy (In re McLeroy),* 250 B.R. 872 (N.D.Tex.2000) (standing under § 548 limited solely to the trustee).

23. *See, Union Planters,* 120 S.Ct. at 1951, n. 5. ("We do not address whether a bankruptcy

court can allow other interested parties to act in the trustee's stead in pursuing recovery under § 506.").

24. *Id.* ("Whatever the validity of [derivative standing], it has no application here ...")

25. *See,* § 544(a) ("The trustee shall have ..."); § 544(b)(1) ("... the trustee may avoid ..."); § 545 ("The trustee may avoid ..."); § 547(b) ("... the trustee may avoid ..."); § 548(a)(1) ("The trustee may avoid ..."); § 548(b) ("The trustee of a partnership debtor may avoid ..."); § 549(a) ("... the trustee may avoid ...").

creditor to recover property via the provisions of the Bankruptcy Code, § 503(b)(3)(B) is meaningless. Because of trustee standing to be the recovering party, though, that standing must be conferred before the action or process to recover the property, by court approval. Otherwise, the creditor cannot act; a party who cannot act cannot recover.

█ Section 503(b)(3)(B), therefore, must be interpreted to provide statutory authority for a court to approve a creditor to act instead of a trustee, and thus, provides an express statutory grant of the authority of the court to confer derivative standing upon creditors to pursue actions that will lead to the recovery of property transferred or concealed by the debtor, for the benefit of the estate. This interpretation is bolstered by the requirement in § 503(b)(3)(B) that the creditor recover property "for the benefit of the estate," which suggests that the creditor must act on behalf of the estate, or in place of the trustee.

Clearly, under *Union Planters,* the creditor has no independent standing to recover property transferred or concealed by the debtor, either for its sole benefit or for the benefit of the estate. Under the Bankruptcy Code, the trustee is charged with the primary, original duty to recover property transferred or concealed. The Bankruptcy Code specifically authorizes the trustee to pursue such actions, and the rationale of the *Union Planters* decision intimates that the trustee, and only the trustee, is specifically authorized to do so without court approval. However, the Bankruptcy Code also states that after court approval, a creditor may recovery property transferred or concealed by the debtor, for the benefit of the estate. By

providing for the recovery by creditors, of property transferred or concealed by the debtor, § 503(b)(3)(B) expresses the authority of the court to grant derivative standing to pursue recovery of such property (transferred or concealed).[26]

While this proposition seems self evident, because of the express language of § 503(b)(3), there are numerous reported decisions that either conclude or flirt with the conclusion that the section does not grant authority to confer standing upon creditors to act for the trustee and the estate. In the case, *Surf N Sun Apts., Inc. v. Dempsey,* 253 B.R. 490, 492 (M.D.Fla.1999), the court boldly states,

> Federal courts have consistently held that § 503(b)(3)(B) does not confer standing to creditors to sue on behalf of the bankruptcy estate ... The point being settled, the Court turns its focus to the Code section governing fraudulent transfers to examine whether it includes the necessary grant of authority. See 11 U.S.C. § 548. (citations omitted);

The court in *McCarthy v. Navistar Fin. Corp. (In re Vogel Van & Storage, Inc.),* 210 B.R. 27, 32, n. 4 (N.D.N.Y.1997) in a question begging exhibition of circuitry says,

> Although appellant cites several cases in which a creditor recovered such expenses, these cases beg the question on appeal: in each of these cases, the creditor clearly had standing to take action to recover for the benefit of the estate. Section 503(b)(3)(B) does not itself confer standing; rather, it merely authorizes the recovery of certain expenses.

In *Larsen v. Munoz (In re Munoz),* 111 B.R. 928, 931, n. 2 (D.Colo.1990) the court

---

**26.** *See, e.g., Quiros Lopez v. Unanue Casal (In re Unanue Casal),* 998 F.2d 28 (1st Cir.1993) (creditor authorized pursuant to § 503(b)(3)(B) to commence adversary proceeding to recover property);

points to a confusing and no longer extant excerpt from a major treatise, as follows:

> Ms. Larsen also relies on § 503(b)(3)(B) of the Code as further indication that an individual creditor has standing to pursue a fraudulent conveyance action. That section permits a creditor to claim as an administrative expense the cost of recovery for the benefit of the estate any property transferred or concealed by the debtor. 11 U.S.C. § 503(b)(3)(B). As noted by one commentator, however, "[it] is logical to assume that the provision speaks to those costs and expenses incurred prior to the commencement of the insolvency proceedings or, at least, such costs and expenses incurred prior to the appointment of the trustee." 3 Collier on Bankruptcy ¶ 503.04[b] (L.King 15th ed.1989) (expressing doubt as to whether a creditor may be reimbursed for expenses incurred after the trustee's appointment and noting that court approval may be required to bring an action on behalf of the estate).[27]

Perhaps the catchiest sound bite is from the case *NBD Park Ridge Bank v. SRJ Enters., Inc. (In re SRJ Enters., Inc.)*, 151 B.R. 189, 193, n. 1 (Bankr.N.D.Ill.1993), which suggests, without identification,

> But § 503(b)(3)(B) does not confer standing; it only authorizes recovery of expenses to a creditor who successfully recovered property, which is to say, a creditor who had standing in the first place.

This Court questions the rationale of these cases. We do not suggest that § 503(b)(3)(B) independently confers standing upon a creditor to pursue recovery actions. The clear language tells us that. Instead, the provision confers **on the court the authority to grant** a creditor standing in the place of the trustee. This Court cannot conceive of a situation in which a creditor has independent standing which would allow it to pursue recovery of property transferred or concealed by the debtor, notwithstanding the numerous references within the cited cases to there being many such types of actions (without telling what they are).

Certainly, the Bankruptcy Code provides several situations in which a creditor has independent standing to pursue certain actions, such as objecting to dischargeability under § 523, objecting to the discharge under § 727, and objecting to exemptions claimed under § 522.[28] In none of these situations, however, would pursuing such an action be the recovery "for the benefit of the estate, property transferred or concealed by the debtor." An objection to discharge or dischargeability does not result in recovery of property, and an objection to exemptions necessarily means that the property has not been transferred or concealed. Thus, a creditor with standing under these provisions would not fall within the purview of a creditor eligible to recoup expenses under § 503(b)(3)(B). A creditor pursuing one of these types of actions would not be a "creditor that recovers." To be a creditor that recovers property transferred or concealed, the creditor must have taken action under the avoidance provisions of the Bankruptcy Code, or must have utilized a cause of action to which the estate suc-

---

**27.** We cannot understand how court approval could be obtained prior to the "insolvency proceedings" or just how enough property to warrant a separate subsection in the code could be recovered before the appointment of a trustee. Anyway, Collier now falls pretty much into line with the suggestion, that we concur in here, that court approval (or standing) can be given pursuant to section 503(b)(3). See, Collier on Bankruptcy, Sec. 503.10[3], at p. 503–61.

**28.** *See,* § 523(c)(1); § 727(c)(1); § 522(1).

ceeded, all (any) of which, as far as the Court can glean, preclude independent standing of the creditor in favor of trustee standing. How, then, does one already have standing such that its expenditures outlaid in recovering property fit within the confines of § 503(b)(3)(B). One doesn't.

The problem with the aforementioned cases is that they have inferentially agreed with cases that incorrectly included certain actions within those to which 503(b)(3)(B) is applicable. For example, a denial of discharge action for concealment might give rise to the recovery, by the estate (through the trustee in another proceeding, or even in an action joined with the denial of discharge proceeding), of the property concealed. However, the statutory language does not extend to a situation where the action has ultimately resulted in the estate recovering property (because of the creditor's participation or involvement). The statute is limited to situations wherein the creditor is "a creditor that recovers." the connection must be direct. The creditor must be the recovering party; extension to situations where the creditor's action indirectly or ultimately leads to the recovery of property is contrary to the statute. So, to the extent these cases have said that the type of actions for which the creditor has independent standing can qualify the creditor bringing such an action for treatment of the expenses of the action as an administrative expense, the cases are wrong.

There is no need to resort to inherent judicial or equitable authority to create the doctrine of derivative standing; it is already imbued within the Bankruptcy Code.

The statutory grant of authority to confer derivative standing, however, does not help counsel for Whitney in this case. Counsel for Whitney, undoubtedly contributed extensively to the discovery of the settlement proceeds, and the ultimate accumulation by the Trustee of sufficient money to pay all creditors plus interest under § 726(a)(5). That action, however, does not rise to the level that would generate the designation of Whitney as a "creditor that recovers" sufficiently within the precinct of § 503(b)(3)(B). The phrase, "a creditor that recovers" requires foremost that the creditor be the moving party, on behalf of the estate, by means of derivative standing that can be granted under § 503(b)(3)(B). In this case, Whitney did not act under a grant of derivative standing from this Court. Moreover, while Whitney undoubtedly contributed to the Trustee's ultimate recovery of the settlement proceeds, the Trustee, nonetheless, was the party that actually recovered the property. Whitney, therefore, is not entitled to reimbursement of expenses under § 503(b)(3)(B), and thus, counsel for Whitney is not entitled to attorneys fees under § 503(b)(4).

■ The Court poses as an argument on behalf of Whitney, that § 503(b) is illustrative,[29] and therefore, that failure to procure derivative standing is not fatal to counsel for Whitney's claim for attorney's fees. Certainly, Whitney contributed to the collection of the money by the Trustee. Whitney's contribution can easily be termed "substantial." However, making a substantial contribution to a case is grounds for reimbursement of expenses to a creditor only when the case is a case under chapter 9 or 11 of the Bankruptcy

---

**29.** *See,* § 503(b)(3)(B) ("after notice and hearing there shall be allowed administrative expenses, . . . *including* ").

Code.[30] As § 503(b)(3)(D) is expressly limited to cases under chapters 9 or 11 of the Bankruptcy Code, and this case is a case under chapter 7 of the Bankruptcy Code, the substantial contribution ground of recovering expense reimbursement does not apply.[31] Thus, counsel for Whitney cannot bootstrap his claim for attorney's fees onto a claim for "substantial contribution" under § 503(b)(3)(D).

Certainly the list in § 503(b) is illustrative, but the language of the specifically enumerated provisions establishes that certain possible avenues for reimbursement are precluded by those that are included. To expand the situations expressly covered by the Section to include expense reimbursement under circumstances failing to meet the requirements of those explicitly stated situations would effectively contradict the conditions of expense recovery which are expressly stated. The two possible provisions under which Whitney could be entitled to expense recovery are: 1) reimbursement for a creditor's expenses for making a substantial contribution to a chapter 7 case, and; 2) reimbursement of expenses for a creditor that recovers property without the grant of derivative standing from the Court. Section 503(b)(3)(D) precludes the first because of its inapplicability to chapter 7 cases, and the inability to ever assert a claim for recovery of property transferred or concealed without a grant of derivative standing under § 503(b)(3)(B), not to mention the failure to actually recover the property, precludes the second.

Whitney did not obtain a grant of derivative standing. Nor did Whitney actually recover any property for the benefit of the estate. Whitney, at most, substantially contributed to a chapter 7 case. Whitney, therefore, is not entitled to reimbursement of expenses under Section 503(b)(3)(B), and thus, is not entitled to have its attorney's fees paid (for the substantial contribution) under § 503(b)(4). Finally, the Court regrets having to issue this Opinion, because it wishes there was some way the Bankruptcy Code allowed the requested compensation. Counsel for Whitney has greatly assisted the trustee. However, from a structural standpoint, the reasoning offered today provides a clearly visible future road. The trustee in a chapter 7 case is charged with the primary responsibility for recovering property transferred or concealed by the debtor. *IF* the trustee fails or refuses to act, then § 503(b)(3)(B) provides this Court with authority to grant a creditor standing to pursue recovery, of particular property, in the trustee's stead. If the Trustee turns a blind eye, the creditor should ask the Court to let the creditor seek recovery. If the creditor is not granted such derivative standing, the creditor cannot pursue the action because otherwise standing is specifically limited to the trustee. The first course of action, for a lawyer in the position of Whitney's counsel, should always be to contact the trustee with the information one has, to let the trustee do it. Like the trustee did in this case.[32]

---

30. *See,* § 503(b)(3)(D).

31. *Accord, United States Trustee v. Farm Credit Bank (In re Peterson),* 152 B.R. 612, 614 (D.S.D.1993) ("if a creditor who makes a substantial contribution in a Chapter 12 proceeding is entitled to compensation for its expenses under § 503(b), the phrase 'in a case under Chapter 9 or 11 of this title' in subsection (3)(D) would be merely excess verbiage.")

32. The Court thanks counsel for Whitney and, though it is probably no consolation, congratulates him for representation of his client such that the client will be paid all that the Bankruptcy Code allows it to receive, a not too common an outcome for a Chapter 7 case.

## IV. CONCLUSION

The claim of Whitney is fixed as an allowed unsecured claim against the estate in the amount of $11,237.21. It and all other claims are to bear interest from the petition date at the rate of 5.60% per annum. The Trustee's distribution shall be amended to be consistent with these reasons. The separate request for attorney's fees is denied. A separate Order shall issue.